ELI METCOFF et al., Plaintiffs-Appellees, Cross-Appellants, v. MUTUAL TRUST LIFE INSURANCE COMPANY, Defendant-Appellant, Cross-Appellee—(SALK, WARD AND SALK, INC., Defendant).—(MUTUAL TRUST LIFE INSURANCE COMPANY, Plaintiff-Appellant, Cross-Appellee, v. HARRIS TRUST AND SAVINGS BANK et al., Defendants.)

(No. 58046;

First District (2nd Division)—November 4, 1975.

William B. Davenport and John J. Crown, of Chicago (Jenner & Block, of counsel), for appellant.

Torshen, Fortes & Eiger, Ltd., and Marvin L. Goldberger, both of Chicago (Jerome H. Torshen and Robert F. Berrey, of counsel), for appellees.

Mr. JUSTICE HAYES delivered the opinion of the court:

The instant controversy evolves from events beginning in late 1961. At that time, William and Lawrence Metcoff and Milton Joseph desired to purchase some land for a real estate development project. William and Lawrence did not have the necessary funds for their share of the purchase price of the 7.3-acre tract of land which had been chosen for the project. William and Lawrence contacted the Lake View Trust and Savings Bank (hereinafter Lake View) in an effort to arrange for a loan to finance their share of the money needed to purchase the land. Anton Weiss, Lake View's Vice-President, advised William and Lawrence that Lake View did not make purchase money loans on land, and suggested that they enlist the financial support of their parents, Eli and Celia Metcoff, in undertaking the project.

Further efforts of William and Lawrence Metcoff led to Lake View loans of $16,000 on 24 January 1962 and of $230,000 on 8 February 1962. Each loan was evidenced by a promissory note dated 9 February 1962 and made payable to the order of Lake View in the amount of the respective loan; neither note charged a rate of interest in excess of 7%, which was the maximum legal rate of interest then chargeable by written contract on nonbusiness loans under Illinois law (Ill. Rev. Stat. 1961, ch. 74, par. 4). Each note was signed by Eli and Celia Metcoff, William and Lawrence Metcoff, and Hyman and Tillie Leader. The two notes were secured by the pledges of Eli and Celia Metcoff of their beneficial interests in Harris Bank land trust No. 9512, and by the pledges of Eli and Celia Metcoff, William and Lawrence Metcoff, and Hyman and Tillie

Leader of their beneficial interests in Harris Bank land trust No. 11895.[1] William and Lawrence Metcoff executed and delivered two promissory notes payable to the order of their parents, Eli and Celia Metcoff, in the exact amounts of the two Lake View loans, to evidence the contemporaneous loan of the proceeds of the two Lake View notes to them by their parents. The proceeds of the Lake View notes were then used by William and Lawrence Metcoff to purchase the tract of land with Milton Joseph. The title to the tract of land was taken in a land trust of which William Metcoff, Lawrence Metcoff, and Milton Joseph were the sole beneficiaries. A corporation was organized for the development of the tract of land with William and Lawrence Metcoff and Milton Joseph as the sole shareholders, directors, and officers.

The two Lake View notes were repeatedly extended past their original 90-day terms[2] until the last extension of the loans expired on 23 May 1963. On 23 May 1963, Eli and Celia Metcoff borrowed $245,000 from defendant, the Mutual Trust Life Insurance Company (hereinafter Mutual). Eli and Celia pledged as collateral their beneficial interests in Harris land trust No. 9512. The greatest portion of the proceeds of the Mutual loan ($210,000) was used by Eli and Celia Metcoff to pay in full the balance then due on the two earlier Lake View loans, whereupon the earlier pledge to Lake View of the beneficial interests of Eli and Celia Metcoff in Harris land trust No. 9512 was released. Salk, Ward, and Salk Inc., which had procured the Mutual loan for the Metcoff parents, was paid a commission of $15,000 by the Metcoff parents for its services out of the proceeds of the Mutual loan. The balance of the proceeds of the Mutual loan went towards paying miscellaneous charges such as tax deposits and costs of surveys apparently related to the real estate involved in Harris land trust No. 9512. The Mutual loan bore interest at the rate of 5.5% plus a discount of 2% with the resultant aggregate interest rate of 6.633%, which was below the maximum legal rate of interest of 7% then chargeable by written contract on nonbusiness loans under Illinois law (Ill. Rev. Stat. 1963, ch. 74, par. 4). The Mutual loan became due on 1 July 1965, at which time it was extended for an additional three years with an aggregate interest rate of 6.171%, which was again below the maximum legal rate of interest then chargeable by written contract on nonbusiness loans under Illinois law (Ill. Rev. Stat. 1965, ch. 74, par. 4).

---

[1] It appears that the beneficial interests under Harris Bank land trust No. 11895 were held by William and Lawrence Metcoff and the Leaders, but the Metcoff parents also signed the pledge at the request of Lake View.

[2] The Lake View loans were intended as short-term loans pending the efforts of codefendant Salk, Ward, and Salk, Inc. (a firm of mortgage brokers), acting on behalf of the Metcoff parents, to obtain longer-term financing.

On 1 July 1968, the unpaid balance of the loan in the amount of approximately $171,024 was further extended for one year with an aggregate interest rate of 8.335%, which was in excess of the maximum legal rate of interest permitted by written contract on nonbusiness loans in Illinois (Ill. Rev. Stat. 1967, ch. 74, par. 4). On 1 July 1969, the unpaid balance of the loan in the sum of approximately $171,024 was again extended for an additional year with an aggregate interest rate of 11.169%, which was also in excess of the maximum legal rate of interest permitted by written contract on nonbusiness loans in Illinois (Ill. Rev. Stat. 1969, ch. 74, par. 4). When the third extension expired on 1 July 1970, Mutual sought to recover the balance of the loan and refused any further extensions.

On 20 October 1970, Eli and Celia Metcoff filed a two-count action against Mutual and Salk, Ward, and Salk, Inc. The first count was brought against Mutual pursuant to section 6 of "An Act in relation to the rate of interest * * *" (Ill. Rev. Stat. 1969, ch. 74, par. 6) to recover statutory damages arising out of Mutual's alleged extraction from plaintiffs of usurious interest on the second and third extensions of the Mutual loan. The second count as amended, requested an accounting and other legal and equitable relief from Salk, Ward, and Salk, Inc. Summary judgment was entered on the second count in favor of Salk, Ward, and Salk, Inc., by an order not involved in this appeal.

Mutual commenced a separate suit which sought to foreclose Mutual's mortgage upon the pledged collateral, to have a judicial sale of the pledged collateral ordered, and to have a deficiency decree entered against Eli and Celia Metcoff if the proceeds of the sale of the collateral were insufficient to discharge the balance due Mutual upon its loan. The two suits were consolidated on 21 December 1970. Both the Metcoffs and Mutual filed cross-motions for summary judgment. On 30 May 1972, the trial court entered formal findings of fact and conclusions of law which related solely to the Metcoffs' usury action, and on 16 June 1972 the Metcoffs' motion for summary judgment was granted, and Mutual's motion for summary judgment in its favor was denied. The Metcoffs were awarded damages in the amount of $87,220.18, twice the amount of the interest charged to them by Mutual under the second and third extensions of the Mutual loan. The judgment decree further provided that said judgment might be used by Eli and Celia Metcoff as a setoff against liability on the mortgage which Mutual sought to foreclose, and also provided that the court reserved jurisdiction for the purpose of determining the amount of attorneys' fees to be allowed to Eli and Celia Metcoff against Mutual. Mutual appeals from the grant of summary judgment

for the Metcoffs and from the denial of summary judgment for Mutual.[3]

Mutual contends on appeal that the 23 May 1963 Mutual loan and the three extensions thereof constituted a "business loan" within the meaning of section 4(c) of the Act (Ill. Rev. Stat. 1963, 1965, 1967, and 1969, ch. 74, par. 4(c)), and was therefore exempt from the usury penalty provisions of section 6. This so-called "business loan" exception to the general usury provisions provides that it is lawful to charge any rate or amount of interest with respect to the following type of transaction:

> "(c) Any business loan to a business association or copartnership or to a person owning and operating a business as sole proprietor or to any persons owning and operating a business as joint venturers, or to any limited partnership, or to any trustee owning and operating a business or whose beneficiaries own and operate a business, transacted solely for the purpose of carrying on or acquiring the business of such business association, copartnership, joint venture, limited partnership, trustee, beneficiaries, or persons; * * *."

Ill. Rev. Stat. 1969, ch. 74, par. 4(c).

Although only the second and third extensions of the Mutual loan to Eli and Celia Metcoff charged rates of interest in excess of the written contractual statutory limit on nonbusiness loans, Mutual contends that the entire dealings of the Metcoff parents in obtaining financing and refinancing for the business venture of their sons brings the original Mutual loan to Eli and Celia Metcoff and all three extensions thereof within the "business loan" exception of section 4(c). The alleged business purpose of the Metcoff parents was to make possible the acquisition and development of the 7.3-acre tract of land by their sons Williams and Lawrence Metcoff. Accordingly, Mutual contends that the Mutual loan was, if anything, even more clearly a business transaction than the original Lake View loan, as it had been negotiated by well-known mortgage brokers (Salk, Ward, and Salk, Inc.) for the purpose of refinancing the purchase of the land. Mutual further contends that Lawrence and William Metcoff had spent their working careers as employees of Eli Metcoff, in his real estate management and insurance business (the Irving Realty Company),

---

[3] The Metcoffs misconceive the scope of the respective grant and denial of summary judgment as extending to Mutual's foreclosure proceeding. The motion of each party for summary judgment related solely to the Metcoffs' usury action and to the disposition of monies in a certain escrow account. The findings and conclusions of law of the trial court related solely to the Metcoffs' usury action, as did its judgment decree. The judgment decree appealed from did not rule upon the disposition of the monies in the escrow account, and has no relationship at all to Mutual's foreclosure action.

A motion by the Metcoffs to dismiss Mutual's appeal is denied. A further motion by the Metcoffs to dismiss their own cross-appeal is allowed.

and that Eli and Celia Metcoff had borrowed the money for the sole purpose of furthering the business venture of their sons. Hence, Mutual contends that its loan and the extensions thereof, whether viewed by themselves or as part of the series of transactions beginning with the original Lake View loans, are exempt from usury limitations because said loans were business loans.

■■ We do not agree, however, that viewing the dealings of Eli and Celia Metcoff in either light brings the Mutual loan and its extensions within the exemption of section 4(c), because the exemption applies only in cases where a loan is made to a specified type of business person or entity solely for the purpose of carrying on or acquiring the business of such person or entity.

The proceeds of the Lake View loans were ultimately used by the two sons to acquire land for their business of developing that land, a business in which their parents had no part. We note the following facts:

(a) The sons were told by a Lake View bank officer that the bank did not make purchase money loans for the purchase of land, and it was then suggested to the sons that they involve their parents in the proposed loan.

(b) The collateral for the loan was in principal part the beneficial interests of the parents in Harris Bank land trust No. 9512, which beneficial interests alone were later accepted by Mutual as satisfactory collateral for its loan of $245,000 to the parents.

(c) The parents contemporaneously took two promissory notes from the sons in the exact amounts of the loans made by Lake View.

(d) There is nothing in the record to indicate that the sons delivered any note to the Leaders, so that the parents must also have been responsible to the Leaders for the liability which they incurred by signing the Lake View notes and for their pledge of whatever interest they had as co-beneficiaries under Harris land trust No. 11895.

This combination of facts makes it clear that Lake View would not lend to the sons on the security of a purchase money mortgage on the land to be acquired by the sons for their business purposes. Nor would the bank make the loan on the security of the beneficial interests of the sons in Harris Bank land trust No. 11895, even though the Leaders as cobeneficiaries under the same land trust joined with the sons in co-making the notes and copledging the security. The fair inference then is that the loan was made, not to the sons (whether with or without the Leaders) but to the parents and on the principal security of the beneficial interests of the parents in their land trust No. 9512. As far as Lake View was concerned, the parents were the principal borrowers and co-

makers on the note. What the parents might then see fit to do with the proceeds of the loan (namely, to lend those proceeds of their sons for the business purposes of the sons, in which business purposes the parents had no part) was of no concern to Lake View.

The circumstances, therefore, lead to the inference that the Lake View loans were made to the parents, with the sons and the Leaders joining as comakers merely for additional security to the Lake View bank. It is undisputed that Lake View had refused to make the loan to the sons for their business purposes (with or without the joinder of the Leaders). It is also undisputed that the parents were not themselves in the business of acquiring land for development, and did not themselves have any part in the proposed business venture of their sons; on the contrary, they took two promissory notes from their sons for the exact amounts of the Lake View loans. It follows that the Lake View loans were loans made to the parents and not for any business purposes of the parents. Hence, the loans were not business loans under the statute because the loans were not made to the parents solely to enable the parents to carry on any business of the parents or to acquire any business for the parents. Hence, the Lake View loans were nonbusiness or personal loans to the parents. It follows that the Mutual loan and the extensions thereof were loans made by Mutual to the parents to enable the parents to discharge their personal liability on the nonbusiness or personal loans made to them by Lake View; and in fact the proceeds of the original Mutual loan were so used. As such, the Mutual loan and the three extensions thereof were not "business loans" within the exceptions provided in section 4(c) and the interest charged by written contract in the last two of the three extensions was usurious.

The four cases cited by Mutual are distinguishable. In *Koos v. First National Bank* (S.D. Ill. 1973), 358 F. Supp. 890, *aff'd* (7th Cir. 1974) 496 F.2d 1162, the court construed certain savings and loan shares and life insurance cash values as "certificates of stock" or "certificates of deposit" within an entirely different exemption from the usury law than is argued herein. In *Rogus v. Continental Illinois National Bank & Trust Co.* (1972), 4 Ill.App.3d 557, 281 N.E.2d 346, the record indicated that the sole borrower initiated a usurious loan in order to participate in two business transactions, one of which related to a business of which he was one of the owners. In *People v. Gallo* (1973), 54 Ill.2d 343, 297 N.E. 2d 569, a criminal usury case, the court describes the business loan exemption as drawing a line between loans to those engaged in business and loans to those who are not, and found that defendant was not making a business loan. Eli and Celia Metcoff cannot be said to be engaged in business regarding the Mutual loan where there was no attempt on their

part to apply the proceeds of that loan to carrying on or acquiring any business of theirs.

██ In *Ross v. Lake City Equity Finance Corp.* (7th Cir. 1970), 425 F. 2d 1, the borrowers made an allegedly usurious loan for the express purpose of personally applying the proceeds to purchase vacant land for a shopping center development. The borrowers executed an affidavit for the lenders, in the course of negotiating the loan, which indicated that "they were engaged in the business of construction and of buying and selling real estate, in connection with which it was necessary from time to time for them to borrow funds and that they currently needed $190,000, which they sought to borrow from defendant with the understanding that this would be a business loan within the meaning of the Illinois statute respecting interest." This affidavit illustrates the difference between the nature of the business loan in *Rosse* and the nonbusiness loan in the instant case. The Metcoff parents did not use the Mutual loan to acquire or develop land for themselves or for anyone else and they did not use it in connection with their business; they used it to discharge their personal liability to Lake View.

██ Mutual also challenges the judgment against it on the grounds that a legend stating "This is a business loan for business purposes" appears on a letter of direction from Eli and Celia Metcoff to their land trustee, the Harris Bank, in connection with the third extension of the Mutual loan, and that this document raises genuine issues of material fact. The record raises an issue as to whether plaintiffs signed this letter of direction at a time when it bore the business loan legend; however, this issue is not material to the resolution of this case. Having decided that neither the Lake View loan nor the Mutual loan and the extensions thereof were within the statutory exception, the appearance of this legend on a letter of direction to plaintiff's own land trustee would not alter our conclusion. No argument may be made that Mutual relied on this notation, as there is no contention that the statement was made to anyone other than to Eli and Celia Metcoff's own land trustee. Unlike the affidavit quoted from the *Ross* case, this notation was not made to the lender, did not state the nature of the borrower's business, and did not allege a need for business funds or state that the proceeds of the loan would be used solely to acquire or carry on their business. The facts of this case do not raise the issue of whether a representation by a borrower made to a lender that a loan is a business loan within the meaning of the statutes of Illinois respecting interest, would estop said borrower from asserting that the transaction did not in fact fall under the business loan exemption. Therefore, the existence of this letter of direction does not raise a genuine issue of material fact.

For the foregoing reasons, the judgment of the circuit court is affirmed, and the cause is remanded to the trial court for such further proceedings as are not inconsistent with this opinion.

Judgment affirmed and cause remanded.

DOWNING, P. J., and LEIGHTON, J., concur.