MAYWOOD-PROVISO STATE BANK, Plaintiff-Appellee, *v.* GEORGE SOTOS *et al.*, Defendants-Appellants.

Second District   No. 80-673

Opinion filed April 7, 1981.

Kenneth L. Levine, of Skokie, for appellants.

Kenneth J. Nannini, of Michael Cooper & Associates, of Hillside, for appellee.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

The defendants, George Sotos and Lambert Sotos, appeal from the order of the circuit court of Lake County granting summary judgment against them on a note executed in favor of the plaintiff, Maywood-Proviso State Bank (hereafter Bank), also from the order denying their motion to open a judgment by confession.

George and Lambert Sotos were the sole shareholders and officers of a corporation named "Mr. George's Restaurant, Ltd." which owned and operated the Nordic Steak House and Pub.

Consumers Packing Company was a supplier of meat for the corporation. The corporation ran up a bill of $19,000 to Consumers Packing Company (hereafter Consumers). Consumers demanded payment and the corporation gave it checks in payment but the checks were dishonored. Dean Paps, president of Consumers, then suggested to the Sotos brothers that possibly they could borrow the money to pay the bill. The

affidavit of Clay Belongia, vice-president of the Bank, states that around October 1, 1979, Dean Paps approached him regarding the possibility of his bank lending money to George and Lambert Sotos to allow them to satisfy an existing obligation due to Consumers from Mr. George's Restaurant. The affidavit states that he, Belongia, had a number of telephone conversations with George Sotos regarding such a loan and he tried to arrange an appointment on several occasions for the Sotos brothers to come to the bank to execute a note "evidencing such loan arrangement," but the Sotos brothers did not keep any of these appointments. However, according to the affidavit of Belongia, George Sotos phoned Belongia and asked if he could have the note brought to Mr. George's Restaurant by Dean Paps, which he, Belongia, agreed to. The affidavit of Lambert Sotos states that on October 21, 1979, Dean Paps appeared at the restaurant, "presented the promissory note and security agreement to George Sotos and myself and pressured us to sign both instruments." The affidavit continues, "I informed Dean Paps that the way the promissory note was drafted would impose a personal obligation on George Sotos and myself and that we would only sign the note if it were a corporate obligation. I inserted the words 'Mr. George's Restaurant, Ltd.' in pen on the face of the original note and George Sotos and I signed our names and initialed the additional hand written language." The cashier's check accompanying the note was then endorsed by George and Lambert Sotos and delivered to Dean Paps.

The note contained a provision for confession of judgment if a default occurred. Default having occurred, the Bank confessed judgment on the note against George and Lambert Sotos as their personal obligation and judgment on the note was accordingly entered. George and Lambert Sotos then moved to open the judgment, stating that they had a meritorious defense. They filed their answer alleging the circumstances set forth above as to the facts surrounding the execution of the note and in addition asserted that they had affirmative defenses. The trial court, after argument on the motion to open the judgment, denied the motion. The defendants then filed a motion for reconsideration of the trial court's ruling denying their motion to open the judgment and filed an amended answer setting up not only the contention that the note was a corporate obligation but also two affirmative defenses: (1) that the note, if it was held to be a personal obligation, was clearly usurious since it provided for a 16% rate of interest, whereas only 8% interest is allowed by statute, and (2) that under the Federal Truth in Lending Act the note was invalid as not complying with certain provisions of that act. (Since the contention regarding the Federal Truth in Lending Act was waived by defense counsel at oral argument, we will not consider it here.)

The trial court denied the motion to reconsider the issue of personal

liability on the note but opened the judgment by confession to allow a trial on the issues raised by the two affirmative defenses and continued the matter of the defendants' motion for discovery of certain documents. The Bank then filed a motion for summary judgment as to the two affirmative defenses. After a hearing, the trial court granted the Bank's motion for summary judgment as to the issues raised by the affirmative defenses and confirmed the judgment by confession against George and Lambert Sotos on the promissory note.

In this appeal the defendants contend (1) that the trial court erred in ruling as a matter of law that the defendants were personally liable on the note; (2) that if the defendants were personally liable on the note then the trial court erred in holding the note was not usurious; (3) as to the violation of the Federal Truth in Lending Act raised in the brief as an affirmative defense, as noted above, this was waived at oral argument.

An examination of the original note submitted as an affidavit in this case raises at least a doubt as to the intention of the signers in executing the note. The note is typewritten and is signed in the right-hand space (the space for signatures) by George Sotos and Lambert Sotos, but on the left-hand side (the space provided for address) is printed in ink "Mr. George's Restaurant, Ltd." and underneath also appears in ink "OK Dean Paps George Sotos L. Sotos." The handwriting of the Sotos brothers resembles the signatures on the right-hand side, and Dean Paps admits the notation bearing his signature was made at the time the note was signed by the Sotos brothers. In an affidavit Dean Paps states that "on October 21, 1979, when I delivered said note for execution by Messrs. George and Lambert Sotos, Mr. Lambert Sotos requested that I make a notation on the note which was then initialed by myself, Mr. George Sotos and Mr. Lambert Sotos, identifying the address of 2750 Grand Avenue, Waukegan, Illinois, as the address of Mr. George's Restaurant."

In our opinion, the manner in which the note was executed renders the intention of the signers unclear. The specification of the typewritten address on the note "2750 Grand Avenue," as being the address of Mr. George's Restaurant, hardly seems important enough to require the signature of all of these parties to acknowledge it and it would logically appear that the parties were validating a correction or change, in adding "Mr. George's Restaurant, Ltd." to the note rather than merely explaining that the typewritten address was that of the restaurant, rather than that of the individuals signing. It would logically seem that if the only correction intended was the proper address of the signers of the instrument, they would simply have crossed out the address of the restaurant and inserted their own address. This would hardly have required the Sotos brothers to sign again, but in any event there was no reason for Dean Paps to acknowledge that change if it was intended only to clarify whose address

was on the note. Moreover, it seems unnecessary to be concerned with the address of the restaurant since, according to Dean Paps, the restaurant was not intended to be involved. Thus, the manner of executing the note creates some doubt as to the intention of both George and Lambert Sotos and Dean Paps, in acknowledging the handwritten correction.

We are not, of course, concerned here with the merits of this case—whether Lambert and George Sotos executed a personal note making them individually liable or whether they executed only a corporate note, not rendering them personally and individually liable, is not the question immediately before us. However, we see a basis in the note itself for allowing further evidence to be heard as to the intention of the signers.

Section 3—403 of the Uniform Commercial Code (Ill. Rev. Stat. 1979, ch. 26, par. 3—403) provides in part as follows:

> "(2) An authorized representative who signs his own name to an instrument
>> (a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;
>> (b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity." Ill. Rev. Stat. 1979, ch. 26, par. 3—403(2)(a), (b).

■■ Under this wording of the Uniform Commercial Code it has been held that parol evidence is admissible to show the capacity in which the person intended to sign the instrument where both the name of the person represented (in this case the corporation) and the name of the person sought to be held individually (George and Lambert Sotos) are on the instrument as possible signers. (See *Nussbaum v. Williams* (1980), 86 Ill. App. 3d 272; *Kankakee Concrete Products Corp. v. Mans* (1980), 81 Ill. App. 3d 53; *First Bank & Trust Company v. Post* (1973), 10 Ill. App. 3d 127, 131.) In the last named case, the court said:

> "The ambiguity apparent from the signatures on the note and the security agreement presented a question of fact which justified the introduction of parol evidence to show the intention of the parties and the capacity in which they signed the note, and such intention is controlling in determining their liability." 10 Ill. App. 3d 127, 131.

Certain logical considerations proceeding from the background circumstances of this case intrude themselves and appear to justify further inquiry as to the capacity in which George and Lambert Sotos signed the note. While it is true that the Bank would probably have refused to make

the loan to the corporation itself under ordinary circumstances, the circumstances here were far from ordinary. The testimony as well as the note and the cashier's check themselves established that Belongia, the Bank's vice-president, had never met either of the Sotos brothers and so far as the record indicates he did not know or inquire as to their personal worth or credit. All he actually knew so far as the record discloses was that they owned a restaurant which owed money to the Bank's client, Consumers. We do not need to speculate impermissibly to deduce that there was a rather close relationship between Belongia and Paps. This is indicated by the unusual action by Belongia of making up a cashier's check payable to George and Lambert Sotos and Consumers with the promissory note and entrusting the note for delivery and execution and the check for endorsement by the Sotos brothers to Paps. This is not the usual way of making a loan of $19,000 to persons the banker had never met and from whom he had no tangible security nor any personal knowledge of their assets. Thus the Bank is not in a position to refute the defendants' contention on the basis of what a bank would ordinarily do or not do in a typical loan situation. Since the Bank admittedly had no prior relationship with either of the Sotos brothers on a business or personal level, the implication arises that the loan was made as an accommodation to Paps, rather than to the corporation, or to the Sotos brothers. Thus, Paps was more than a mere conduit in the transaction between the Bank and the defendants and the purpose and effect of his signature attesting to the correction in the note can reasonably be open to inquiry in order to ascertain the truth. Actually, what occurred in this case was simply a transfer of the debt from Consumers to the Bank. The Bank paid Consumers and took over as creditor of Mr. George's Restaurant. Under the decisions in this State, on a motion to open a judgment of confession, the court should accept the facts asserted in the defendant's pleadings and affidavits as true and should not weigh the plaintiff's affidavits against the defendant's in deciding the motion. (*Passanante v. Callier* (1978), 61 Ill. App. 3d 360; *Lewis v. Palmer* (1974), 20 Ill. App. 3d 237.) In this case, the facts recited in the defendants' affidavit made out a *prima facie* case against personal liability and the background of the transaction gave some credibility to this defense. The defendants surely knew the corporation was in financial straits at the time the note was executed—they actually filed a petition in voluntary bankruptcy in December of 1979, some two months after the note was executed, so it is not logical to suppose that they would have signed a personal note which they knew was going to be used to bail out an over-extended corporation debt to Consumers.

This consideration gives color to the defendants' contention that the note was not executed as a personal obligation and strengthens the defendants' *prima facie* case. Moreover, the Bank's acceptance and cashing

of the check places the Bank in an equivocal position since it either inspected or should have inspected the signatures on the note before the check was paid. Thus, it should have noted the manner in which the note was signed. Whether it did, indeed, have notice of the alteration before honoring the check is another legitimate question which a trial on the merits might develop.

Since the affidavit of the defendants established a *prima facie* case against personal liability we think the defendants should not have been foreclosed on this point and that the trial court erred in limiting the issues to be tried to the two affirmative defenses.

We consider now the affirmative defense that the note was usurious. The defendants contend that the plaintiff, in insisting on the personal liability of the defendants, is thereby making the note a personal one and is thus limited to 8% interest and if the note is valid as a personal obligation, it obviously violates the Interest Act (Ill. Rev. Stat. 1979, ch. 74, par. 1 *et seq.*) in charging 16% interest. The plaintiff's answer is that it was a loan made to two individuals for a *business* purpose—the satisfaction of a corporate business debt. Therefore, the note is exempt from the interest limitation of section 4(1) of the Interest Act denoting the general interest rate of 8%. Ill. Rev. Stat. 1979, ch. 74, par. 4(1).

■■ Under the admitted facts of this case we are of the opinion the loan clearly falls within the "business loan" exception set out in section 4(1)(c) of the Interest Act. While the defendants contend the loan was for an existing debt of a corporation for which they had no liability and the proceeds went directly to Consumers and were never in their control, the purpose of the loan was obviously to assist the corporation by getting rid of a pressing creditor. In doing this they were clearly motivated by a desire to help the corporation, not a desire to help Consumers or Dean Paps. The fact that the Bank was apparently also motivated by a desire to help Consumers and Dean Paps in making the loan, rather than to help Mr. George's Restaurant, makes no difference in this regard—it was still a loan for business purposes. We hold that the loan was not usurious in that the transaction came within the meaning and intent of section 4(1)(c) of the Interest Act.

The judgment of the circuit court of Lake County is reversed and the cause remanded for a trial on the question of the defendants' personal liability on the promissory note.

Reversed and remanded for trial.

REINHARD and VAN DEUSEN, JJ., concur.