GAYLON H. EHLERS, Trustee, *et al.*, Plaintiffs-Appellees, *v.* ANDREW G. FREY, Defendant-Appellant.

Third District   No. 82—41

Opinion filed October 19, 1982.—Rehearing denied November 22, 1982.

Ernest S. Kettelson, of Kettelson Law Offices, Ltd., of Joliet, for appellant.

B. Douglas Stephens, Jr., and Gary S. Schwab, both of Heyl, Royster, Voelker & Allen, of Peoria, for appellees.

JUSTICE HEIPLE delivered the opinion of the court:

In the original action on this cause, Gaylon H. Ehlers, trustee, for the use and benefit of Chief Industries, Inc., and Chief Industries, Inc., filed to foreclose a trust deed and note. A deficiency judgment was also sought. The defendant, Andrew G. Frey, then counterclaimed for usury. Both parties sought summary judgment on the usury counterclaim. After hearing oral arguments on the issue, the trial court granted the plaintiffs' motion for summary judgment and denied Frey's similar motion. Frey appeals from the entry of judgment in favor of the plaintiffs and against him on the usury counterclaim.

The background of this case follows. On December 14, 1976, a $400,000 note was executed by the A. G. Frey & Sons, Inc., a corporation and Andrew G. Frey, individually, payable to plaintiff Chief Industries, Inc., a corporation. The terms thereof provided for an interest rate of nine percent per annum. The note was secured by a chattel

mortgage of all the tools, equipment, inventory, and vehicles which constituted the major assets of A. G. Frey & Sons, Inc. Andrew Frey signed this chattel mortgage wherein he warranted he was the owner free and clear of all the chattels itemized. At the same time a corresponding trust deed dated December 14, 1976, was signed by defendant Andrew G. Frey and his then wife Patsy Ann Frey, making certain Illinois real estate, then owned by them jointly, security for the $400,000 note. It is this Illinois real estate that plaintiffs seek to foreclose on, and in defense of which defendant has filed this counterclaim for usury now on appeal. Frey contends that the interest rate of nine percent per annum is usurious in violation of the then maximum rate of eight percent per annum. Ill. Rev. Stat. 1975, ch. 74, par. 4.

A brief corporate history of A. G. Frey & Sons, Inc., is necessary. Prior to July 1976, the defendant, Andrew G. Frey, conducted a construction business as sole proprietor under the name of A. G. Frey & Sons Building Service. This business engaged in the erection of grain storage bins. In July 1976, the defendant organized the Illinois corporation, A. G. Frey & Sons, Inc. (hereafter Frey, Inc.), for the same purposes his sole proprietorship operated: erection, construction, and repair of grain storage bins. Thereafter, the defendant became president and general manager of Frey, Inc.

The grain storage bins which were constructed by defendant before July 1976 and by the corporation Frey, Inc., after July 1976 were purchased primarily from the plaintiff Chief who manufactured such items. The defendant notified Chief by letter that his business was thereafter to be conducted by the corporation Frey, Inc., and invited Chief to terminate their business relationship if it had any objection to such change. Chief continued to do business with Frey, Inc. A formal dealership agreement was signed by Chief and Frey, Inc., in December 1976.

Sometime around the latter part of November 1976 or early December 1976, Paul Elsbernd, one of Chief's officers, discussed the financial conditions of Frey, Inc., with the defendant Andrew G. Frey. The fruit of this discussion was a loan and a $400,000 note by defendant Frey and the corporation Frey, Inc., payable to Chief. This note, dated December 14, 1976, provided for interest at the rate of nine percent per annum. This note was secured by a chattel mortgage by defendant Frey, individually, listing all the corporate assets of which he was the owner. Defendant Frey and his then wife, Patsy Ann Frey, signed a trust deed making certain Illinois real estate owned jointly by the Freys security for the note.

The corporate business offices of Frey, Inc., were located on the

real estate in question. The real estate was zoned M-1 for light manufacturing. The property includes at least six offices plus other space devoted entirely to the business operations of Frey, Inc. There is no evidence that the property was ever used as a residence or for any residential purpose other than one room of the office building used by Andrew Frey to sleep in overnight occasionally during the pendency of his divorce action. There was no eating, cooking, or laundry facilities on the property. During daylight hours the entire property was used full time to conduct the grain bin and construction business.

. The entire proceeds of the loan from Chief were used for business purposes, partially to retire debts incurred by Frey when he operated the business as a sole proprietor before incorporation and partially to pay creditors of Frey, Inc. According to Chief's credit manager, the loan proceeds were specifically distributed as follows: $109,276.69 was credited to Frey's account balance with Chief; $200,000 was paid to Frey, Inc.; $67,092.30 was paid to Frey; $23,631.01 was paid to Parsons Manufacturing, Inc., a creditor of Frey.

On or about May 30, 1978, Chief entered the premises of Frey, Inc., and seized its entire assets. On October 25, 1979, Chief filed its amended complaint for foreclosure, claiming no payment on the note since March 1978 and a sum of more than $350,000 due and owing Chief on the note. Defendant Frey filed a counterclaim on January 29, 1981. Therein Frey alleged that nine percent per annum interest charged on his note to Chief was unlawful and usurious because on the date the note was executed, December 14, 1976, the maximum that could be charged was eight percent per annum. (Ill. Rev. Stat. 1975, ch. 74, par. 4.) Frey sought to recover the statutorily provided remedy from Chief: an amount equal to twice the total of all interest discount and charges determined by the loan contract or paid by the obligor, whichever is greater, plus reasonable attorney fees and court costs.

Both parties filed motions for summary judgment on the usury counterclaim. The court heard oral arguments and entered an order on December 22, 1981, in favor of the plaintiffs and against the defendant Andrew Frey on their respective motions for summary judgment.

On appeal Frey asserts that the nine percent per annum interest rate provided for by the note was in violation of the Illinois Interest Act. While Chief argues that Nebraska law should control the resolution of this issue, we agree with Frey that Illinois law is applicable. A trust deed on Illinois real estate secured the note to Chief.

Where real estate is involved, the law of the State where the real estate is located controls. *Harrison v. Weatherby* (1899), 180 Ill. 418.

It is undisputed that at the time the note in the instant case was executed, the Illinois Interest Act provided for a maximum lawful interest rate of eight percent per annum. The note in this case specified an interest rate of nine percent per annum. The Interest Act, however, does provide for exceptions to the general limitation on interest rates. Section 4 of the Interest Act provides in part:

> "It is lawful to charge, contract for, and receive any rate or amount of interest or compensation with respect to the following transactions:
>
> (a) any loan made to a corporation;
>
> * * *
>
> (c) any business loan to a business association or copartnership ***. The term 'business' shall be deemed to mean a commercial or industrial enterprise which is carried on for the purpose of investment or profit ***."

With respect to these exceptions to the general limitation of interest rates specified by the Interest Act, the Illinois Supreme Court stated in *People v. Gallo* (1973), 54 Ill. 2d 343, 351:

> "The line here is drawn between loans to those who are engaged in business and loans to those who are not."

As also stated in *Chicago Title & Trust Co. v. Jensen* (1933), 271 Ill. App. 419, 422:

> "The question whether a loan is usurious is a question of fact, and in determining that question equity will look to the substance of the transaction and disregard the form, and will not permit parties to evade the statute by any scheme or expedient."

In the instant case, Frey alleges that he was not a business association and was not a person owning and operating a business as a sole proprietor. In essence, Frey claims that he was merely an employee of Frey, Inc., and not himself engaged in business. Analysis of the facts leads to a contrary conclusion for purposes of the Interest Act.

Although a corporate charter was issued to Frey, Inc., on July 16, 1976, Frey himself still held title to the substantial assets of the business at the time the note was executed five months later. In the chattel mortgage he executed as security for the note, Frey warranted that he was the owner, free and clear of all liens, of the tools, equipment, and vehicles on the premises of Frey, Inc. Frey also owned the real property upon which the grain bin construction business operated. While all the loan proceeds were used for business purposes, to

pay bills and provide working capital, some of the bills were incurred by Frey when he operated the business as a sole proprietor before incorporation.

This court considered a similar factual situation in *Rock River Savings & Loan Association v. Kelly* (1978), 58 Ill. App. 3d 339. In *Rock River Savings & Loan Association*, as in the instant case, a note and mortgage were executed by a corporation and individuals. In *Rock River Savings & Loan Association*, the mortgage covered real estate owned by the corporation. The proceeds of the loan were applied to pay the existing short-term mortgage on the premises. The premises was improved by a motel. The lender filed suit on the note against the corporate and individual defendants. The individual defendants, who were cosigners on the note along with the corporation, filed a defense of usury. The court noted that the individual defendants were all shareholders of the corporate defendant. The loan was obtained in anticipation of future financial gain by the corporation, which would inure to the benefit of the individual shareholders. The court held that the business loan exception applied to the loan stating:

> "Therefore, while the proceeds of the loan may have been directed to be paid to the corporation by the individual defendants, as shareholders of such corporation, the individual defendants, in obtaining the loan, were acting collectively as a business association or joint venturer in promotion of the project and their investments in the shares of Sterling Motel. On the basis of the record, therefore, we conclude that the trial court properly determined that the loan which was made through the actions of the individual defendants, came within the business exception of section 4(1)(c) of The Interest Act." 58 Ill. App. 3d 339, 343.

Looking to the instant case, we see a stronger case. In the instant case the individual co-maker, Frey, was the principal shareholder of the corporate co-maker. The proceeds of the loan were used for business purposes, both for the purpose of paying bills and providing working capital for Frey, Inc., and to pay business loans which Frey incurred as a sole proprietor. However, the principal factor in the instant case is that Frey and not the corporation held the substantial business assets. The corporation was little more than a shell.

There was a solitary business enterprise here: the construction of grain bins. This enterprise was operated publicly as a corporate venture, as Frey, Inc. However, when the note was executed the principal business assets were all held by Andrew Frey, individually. Thus, we

are led to conclude the business, in reality, was not Frey, Inc., but Andrew Frey, individually.

The defendant argues that he was not an unincorporated business enterprise or sole proprietor after the incorporation of Frey, Inc., in July 1976. He asserts he was merely an employee of Frey, Inc., and that he had no other solitary business interests and thus, the loan was not made for his business purposes and he was not within the business loan exception of the Interest Act. The defendant has cited *Metcoff v. Mutual Trust Life Insurance Co.* (1975), 33 Ill. App. 3d 1059, in support of his argument. In *Metcoff*, the two sons who were engaged in a business purpose, and who desired to obtain a loan to develop a real estate investment, were unable to obtain financing in their individual capacities. The prospective lender suggested that the sons enlist the financial support of their parents, and a loan was eventually consummated with the parents and the sons signing as principals. The *Metcoff* court adopted the view that the loan was made to the parents, who had no business interest, and that the loan proceeds were then transferred to the sons for the purpose of the sons' business purpose. The *Metcoff* court there concluded that the parents could interpose the defense of usury (not including the sons) for the reason that no business purpose of the parents was served by the loan. *Metcoff*, therefore, is readily distinguishable from the instant case. The loan in the instant case was to be used for the furtherance of Frey's business interests. As owner of all the substantial assets of the business operation at the time the note was executed, Frey was more than a mere employee of Frey, Inc. Frey, Inc., was the alter ego of Frey. Their business interests were one and the same. Frey cannot set up a corporation, retain the substantial business assets thereof and say that he, himself, is not engaged in a business venture.

Thus, we hold where a corporation and an individual co-make a note, the individual, as well as the corporation, come within the business loan exception to the Illinois Interest Act, where the loan is made for business purposes and where the individual is the owner of the substantial assets of the corporation at the time the note was executed and where loan proceeds are used to retire precorporation debts of the individual who operated the same business venture in another form before incorporation. Thus, Andrew Frey is not entitled to defend Chief's foreclosure action on the note with usury as a defense, there being an identity of business interests between the corporation, Frey, Inc., and himself.

In view of our disposition of this issue, we find it unnecessary to discuss any of the additional issues argued by the parties.

For the reasons herein stated, the judgment of the circuit court of La Salle County is affirmed.

Affirmed.

SCOTT and STOUDER, JJ., concur.