708 P.2d 781

**Jose R. VILLEGAS and Carmen Villegas, husband and wife, Plaintiffs/Appellants,**

v.

**TRANSAMERICA FINANCIAL SERVICES, INC., an Arizona corporation, Defendant/Appellee.**

**No. 2 CA–CIV 5363.**

Court of Appeals of Arizona, Division 2, Department B.

Oct. 31, 1985.

Southern Arizona Legal Aid, Inc. by Charles R. Pyle, Tucson, for plaintiffs/appellants.

Streich, Lang, Weeks & Cardon by Wm. S. Hawgood, II, Phoenix, for defendant/appellee.

## OPINION

LIVERMORE, Judge.

Plaintiffs, Jose and Carmen Villegas, obtained a $19,550 loan in late 1979 from defendant Transamerica Financial Services, Inc. Interest on the loan was at an annual percentage rate of 18 percent, and the loan agreement called for monthly payments of $353.00. The loan was secured by a deed of trust on plaintiffs' house. In order to avoid the existing usury laws on fixed-term loans, this loan took the form of a revolving loan agreement; its term, therefore, was indefinite, being contingent on the nature of plaintiffs' payments and whether any further money was borrowed. If the $353.00 monthly payments were made and

nothing more was borrowed, the loan would have been paid off in ten years.

Because of the unemployment of Mr. Villegas in late 1980, payments on the loan became delinquent. Transamerica informed the plaintiffs that it would either foreclose on its deed of trust or offer the plaintiffs a new loan at an interest rate of 19.9 percent, with a loan finance fee of 9 "points" and monthly payments of $420 for a period of fifteen years. It did not tell them the existing loan would be paid off in ten years. Plaintiffs accepted the new loan. Because the second loan would cost the plaintiffs nearly twice as much as the first, they brought an action alleging that the transaction was usurious, that it violated the Arizona Consumer Fraud Act, and that it was in breach of a duty of good faith and fair dealing by defendant. Plaintiffs appeal from summary judgments against them on each of their claims.

Plaintiffs' contention that adding the loan fee to the annual percentage rate rendered it usurious under A.R.S. § 44–1201 was answered adversely to them in *Layne v. Transamerica Financial Services, Inc.*, 146 Ariz. 559, 707 P.2d 963 (1985).

Plaintiffs next contend that the trial court erred in holding that the Arizona Consumer Fraud Act, A.R.S. §§ 44–1521 through 1534, does not apply to the lending of money. Section 44–1522 forbids deceptive acts "in connection with the sale or advertisement of any merchandise." Put shortly, Transamerica's position is that the lending of money is not the sale or advertisement of merchandise. Given ordinary usage, that claim has plausibility. Because "merchandise," "sale," and "advertisement" all have special definitions in the statute, not comporting with ordinary usage, we hold that the lending of money is subject to the provisions of the Arizona Consumer Fraud Act.

■ First, we must determine whether money is merchandise. "Merchandise" is defined in Section 44–1521(5) as "any objects, wares, goods, commodities, intangibles, real estate or services." To determine whether that which the plaintiffs ob-

tained fits within this definition, we must analyze their contract with Transamerica. In return for their promise to repay, they obtained $1,888.95 in cash plus a contractual right that Transamerica make certain payments to others. We hold that money is an "object" or "good" or "commodity" and that the contractual right to have Transamerica make those payments is an "intangible" under the statutory definition of merchandise. The broad definition of merchandise, covering both tangibles and intangibles, and the broadly remedial purposes of the legislation require this result. Transamerica argues that the legislature intended to exclude lending institutions because they were regulated in other ways by state and federal authorities. Such regulation, by itself, does not suggest a need to immunize lenders from liability for fraud.

■ We also conclude that the transaction in this case involved a "sale." Under Section 44–1521(7), " 'sale' means any sale, offer for sale, or attempt to sell any merchandise for any consideration, including sales, leases and rentals of any real estate...." While a loan is ordinarily not thought of as a sale, in fact it is the sale of the present use of money on a promise to repay in the future. In form it is no different than the sale of an object, such as a television set, on a future promise to repay.

■ It is even clearer that this transaction involved an "advertisement." That term is defined in Section 44–1521(1) as "the attempt by publication, dissemination, solicitation, or circulation, oral or written, to induce directly or indirectly any person to enter into any obligation or acquire any title or interest in any merchandise." There is no question that plaintiffs were induced to enter into an obligation whether or not they were acquiring title or interest in merchandise. And, because advertisement includes "oral" statements, the negotiations between Transamerica and the plaintiffs fit within that term. An "omission of any material fact" in an advertisement is covered by Section 44–1522. Thus, an oral inducement to take a loan, in which

material facts are omitted, would involve an advertisement.

█ Notwithstanding our disagreement with the trial court's ruling that the Arizona Consumer Fraud Act was inapplicable to this transaction, we are invited to affirm the summary judgment because, according to Transamerica, the facts submitted by plaintiffs do not show a violation of the act. We decline to do so. The trial court has not passed on this argument; in this circumstance we should address it only where the facts and inferences are perfectly clear. On the record before us, we cannot say that test has been met.

█ Plaintiffs' final argument is that Transamerica's conduct violated a duty of fair dealing. Essentially this contention is that Transamerica, by insisting on its contractual rights under the first loan, forced the plaintiffs into a contract which their counsel believes was disadvantageous. Courts have no right to remake contracts to comport with some unspecified notion of fairness nor to refuse enforcement on that ground. That parties have been held to a duty of good faith compliance with contract terms does not create a duty to offer particular terms or to forego available contract remedies. The trial court properly granted summary judgment on this claim.

The judgments of the trial court are affirmed as to the bad faith and usury claims. The judgment in favor of Transamerica on the Consumer Fraud Act claim is reversed and remanded to the trial court for further proceedings.

HATHAWAY, P.J., and LACAGNINA, J., concur.