**Wayne NIENKE, Conservator for the Estate of Belle Nienke, Protected Person, Plaintiff,**

**v.**

**NAIMAN GROUP, LTD., Naiman Group, Marc Naiman, Robert Naiman, Defendants–Appellees,**

**and Concerning,**

**Pryor, Carney and Johnson, P.C., a Colorado professional corporation, Appellant.**

**No. 91CA1217.**

Colorado Court of Appeals, Div. III.

Nov. 19, 1992.

Rehearing Denied Jan. 28, 1993.

Certiorari Denied Aug. 30, 1993.

Berenbaum & Weinshienk, P.C., Gene M. Hoffman, James L. Kurtz–Phelan, Denver, for defendants-appellees.

Pryor, Carney and Johnson, P.C., Rodney R. Patula, Penne A. Goplerud, Englewood, for appellant.

Opinion by Judge SMITH.

The law firm of Pryor, Carney and Johnson (law firm) appeals the trial court's order awarding defendants, Naiman Group, Ltd., Naiman Group, Marc Naiman, and Robert Naiman, $18,534.54 in attorney fees. We affirm in part, reverse in part, and remand with directions.

This lawsuit involves a loan which defendants made to Belle Nienke in October 1986 for $77,000. At the time of the loan, Nienke was a widow in her mid–80s and sole proprietor of an auto repair garage. In connection with the loan, Nienke executed a promissory note at an interest rate of 18% for one year after which time the balance on the note was due. The promissory note was secured by a first deed of trust against Nienke's personal residence, appraised at $70,000, and the auto repair garage, appraised at $80,000.

Approximately six months after the loan was made, Nienke defaulted on the note. In lieu of foreclosure, she agreed to deed her business property to defendants. Defendants, in turn, forgave all indebtedness due under the note and released the deed of trust against Nienke's personal residence.

In 1987, plaintiff, Wayne Nienke, petitioned the probate court to be appointed conservator for Nienke's estate. Thereafter, represented by the law firm, he commenced litigation against defendants and other individuals, not parties to this lawsuit, who either had made loans to Nienke between June 1985 and September 1986 or brokered these loans.

This lawsuit asserted numerous claims against defendants, nine of which were pursued at a trial to the court. At the close of the case, the trial court dismissed all but one of the claims. This remaining claim was settled between the parties following the testimony of defendants' first witness. In conjunction with this settlement, Belle Nienke and her estate were released from any further liability.

Defendants then filed a motion for attorney fees, arguing that the law firm had pursued, among other things, groundless and frivolous claims.

The sole issue on appeal is the trial court's determination that defendants were, indeed, entitled to attorney fees under § 13–17–101, C.R.S., et seq. (1987 Repl. Vol. 6B) for the law firm's prosecution of claims which lacked "substantial justification," in whole or in part. Section 13–17–102, C.R.S., (1987 Repl.Vol. 6B).

## I.

Acknowledging that the trial court is vested with broad authority in deciding whether to impose attorney fees, the law firm, nonetheless, contends that the trial court abused its discretion in awarding defendants attorney fees for defending against the claims brought under the Colorado Consumer Protection Act, the Colorado Organized Crime Control Act, and derivatively, usury and agency. We agree in part.

The record discloses that the trial court's award was based on its conclusion that these claims were frivolous and groundless. Those terms have been defined as follows:

> A claim or defense is *frivolous* if the proponent can present no rational argument based on the evidence or law in support of that claim or defense. This test ... does not apply to meritorious actions that prove unsuccessful, legitimate attempts to establish a new theory

of law, or good-faith efforts to extend, modify, or reverse existing law. Similarly, a claim or defense is *groundless* if the allegations in the complaint, while sufficient to survive a motion to dismiss for failure to state a claim, are not supported by any credible evidence at trial.

*Western United Realty, Inc. v. Isaacs,* 679 P.2d 1063, 1069 (Colo.1984) (emphasis added).

A trial court's award of attorney fees is not to be disturbed on appeal if there is support in the record for the conclusion that the claim or defense advanced was frivolous, that is, the general fact pattern alleged, without regard to the quantum of evidence in support thereof, does not entitle the moving party to relief under any valid or rational legal theory. Likewise, even if a claim or defense escapes characterization as frivolous, the trial court's award will not be disturbed if the record, nonetheless, supports a conclusion that the claim is groundless, that is, lacks any credible evidentiary support at trial.

The crux of the law firm's argument is that the trial court erred as a matter of law in determining that it presented no rational argument in support of the claims or defenses set forth above and, likewise, erred as a matter of fact in determining that it presented no credible evidence in support thereof at trial.

### A.

The law firm first argues that there was a rational basis for, and evidence supporting, its claim that in extending the $77,000 loan to Nienke, defendants engaged in deceptive trade practices proscribed by the Colorado Consumer Protection Act, § 6–1–101, C.R.S. (1992 Repl.Vol. 2) (CCPA). Specifically, they point to § 6–1–105(1)(g), (i), (*l*), C.R.S. (1992 Repl.Vol. 2) which provides as follows:

A person engages in a deceptive trade practice when, in the course of such person's business, vocation, or occupation, such person:

Represents that goods, food, services, or property are of a particular stan-dard, quality, or grade, or that the goods are of a particular style or model, if he knows or should know that they are of another;

. . . .

Advertises goods, services, or property with intent not to sell them as advertised;

. . . .

Makes false or misleading statements of fact concerning the price of goods, services, or property or the reasons for, existence of, or amounts of price reductions.

We agree with the law firm that this claim was neither frivolous nor groundless.

Whether the loan at issue is a "good" or "service" and, thus, subject to CCPA is a legal question of first impression in Colorado. Consequently, we conclude that *only* if the law firm failed to present any rational arguments to extend the CCPA to this type of transaction would it be subject to sanctions under § 13–17–102(4), C.R.S. (1987 Repl.Vol. 6B) for advancing a frivolous claim. *See Western United Realty, Inc., supra; Montoya v. Bebensee,* 761 P.2d 285 (Colo.App.1988).

The record reveals that several arguments were advanced by the law firm on the CCPA claim. The law firm observed that the critical terms "goods" and "services" were *undefined* under the CCPA and that some foreign jurisdictions, under similar circumstances and under philosophically similar "deceptive trade practice" acts, had extended coverage under their acts to finance companies, refinancing, and other loan practices. The law firm cited the court to various supportive state and federal cases, wherein at least one appellate court, namely, *Villegas v. Transamerica Financial Services, Inc.,* 147 Ariz. 100, 708 P.2d 781 (1985) noted that money is an object or "good" and a loan "the sale of the present use of money on a promise to repay in the future."

There is contrary authority as well. *See Haeger v. Johnson,* 25 Or.App. 131, 548 P.2d 532 (1976); *Riverside National Bank v. Lewis,* 603 S.W.2d 169 (Tex.1980). Nonetheless, in failing to define the terms "goods" and "services," the General Assembly has left the scope of these terms unclear and open to various interpretations such as that adopted by the foreign jurisdictions cited by plaintiffs.

Moreover, two factors bolster the reasonableness of the law firm's argument. First, "loans" are not specifically listed as an excluded transaction under § 6–1–106, C.R.S. (1992 Repl.Vol. 2). Second, Colorado case law holds that the terms "goods" and "services" under § 6–1–105, C.R.S. (1992 Repl.Vol. 2) are to be interpreted in light of the CCPA's broad legislative purpose "to provide prompt, economical, and readily available remedies against consumer fraud." *People ex rel. MacFarlane v. Alpert Corp.,* 660 P.2d 1295, 1297 (Colo. App.1982).

■ In light of the foregoing, we conclude that the law firm has made a legitimate and reasoned attempt to extend the CCPA to include loans such as that at issue here. Hence, the law firm's arguments were neither "manifestly insufficient" nor "futile," and the trial court's implicit conclusion to the contrary constituted an abuse of its discretion.

Likewise, we agree with the law firm that the trial court erred in concluding that this claim was unsupported by any credible evidence at trial. Nienke's testimony and documentary evidence relating to the execution of the loan indicated that defendants should have been aware that Nienke's income was extremely limited and that she would be unable, given the obvious disparity of her income to the obligations under the note, to make the monthly payments. Moreover, Nienke's testimony indicated that defendants had represented that they would "put the payments down" so that she could afford them, an action which defendants did not take. Nor did they acknowledge such representations at trial. Finally, the law firm demonstrated at trial that various "costs" set forth in the loan closing statement were either inflated, duplicative, or untimely.

This evidence, while not perhaps persuasive to the trial court, was clearly sufficient to support a reasonable inference that defendants misrepresented or improperly advertised the loan to Nienke or, alternatively, misled Nienke as to the "price" of the loan being offered.

Hence, this evidence constituted "some credible evidence," in support of this claim despite the law firm's inability to convince the court that it had established a prima facie case. *See Colorado Supply Co. v. Stewart,* 797 P.2d 1303 (Colo.App.1990). This claim, therefore, was neither frivolous nor groundless, and the trial court's award of attorney fees for its defense was improper.

**B.**

■ Next, the law firm challenges the trial court's award of attorney fees with respect to its claim under the Colorado Organized Crime Act (COCCA). In advancing this claim, the law firm asserted several arguments, primary among which was its argument that the promissory note executed in connection with the $77,000 loan was usurious and an "unlawful debt" within the meaning of § 18–17–103(6), C.R.S. (1986 Repl.Vol. 8B). Hence, the law firm concluded, defendants had engaged in a prohibited activity under COCCA. We agree with the trial court that this claim lacked substantial justification.

The thrust of the law firm's legal argument, as we perceive it, is that, under COCCA, the $77,000 loan was for a "consumer purpose" and that, thus, the loan was subject to, and "unlawfully" exceeded, the restrictions on finance charges set forth in § 5–3–508, C.R.S. (1992 Repl.Vol. 2.)

The dispositive issue is thus whether, under either the evidence or the law, the law firm's characterization of the loan as a consumer loan is rational. We conclude that it is not.

The law firm's evidentiary argument appears to be that because the largest per-

centage of the loan proceeds, as disclosed by the closing statement, was used to pay off two earlier consumer loans, defendants' loan was, in essence, a "dual purpose" loan, arguably bringing it under the definition of consumer loan set forth in § 5–3–104, C.R.S. (1992 Repl.Vol. 2). That statute provides in pertinent part that a "consumer loan" is a "debt [which] is incurred primarily for a personal, family, or household purpose."

Under the undisputed facts here, however, the law firm's argument lacks merit.

As one commentator has noted, the theoretical problem of determining whether credit has been advanced for a "consumer purpose" may be resolved by obtaining from the debtor a "declaration of purpose." *See* Miller, *The Basic Exclusions from the UCCC: A Road Map for Traversing a New World with Oblique Guides,* 43 U.Colo.L.Rev. 269 (1972). Here, the undisputed evidence was that Nienke executed such a disclosure affidavit wherein she averred that the proceeds of the loan were to be used "solely for business purposes."

Alternatively, the law firm argues that because the evidence disclosed that the primary purpose of the loan was to pay taxes and keep the business afloat so that Nienke's *son* could get the business on its feet, the loan was, in effect, a loan for a personal or family purpose rather than for a business purpose. In advancing this argument, the law firm relies on *Metcoff v. Mutual Trust Life Insurance Co.,* 33 Ill. App.3d 1059, 339 N.E.2d 440 (1975).

The *Metcoff* case, however, involved a situation in which plaintiffs' children, after an initial unsuccessful attempt to obtain a loan for *their* business purposes, sought plaintiffs financial support to complete the transaction. Contemporaneous with the plaintiffs' execution of the loan at their children's behest, the children executed promissory notes to plaintiffs in the exact amount of the loan.

The trial court there concluded that the plaintiffs' loan was "personal," inasmuch as the loan was for the childrens' business, in which the plaintiffs had no part.

*Metcoff* is inapposite to the facts here in which the auto repair garage was owned solely by Nienke and her son's role in the "business" aspect of the garage and his role in the execution of the $77,000 loan at issue was only tangential. Accordingly, we conclude that *Metcoff, supra,* fails to provide rational support for the law firm's consumer loan argument.

Hence, we further conclude that there was no basis for the law firm to assert that the $77,000 loan was a "consumer" loan for purposes of a claim under COCCA. And, inasmuch as "consumer purpose" was the crux of the law firm's COCCA claim that defendants had, in essence, collected a usurious and "unlawful debt," we also hold that the trial court properly determined that the interrelated usury-COCCA claim was frivolous.

Accordingly, the trial court committed no error in awarding defendants fees for defense of the COCCA and usury claims.

## C.

■ Finally, the law firm contests the trial court's determination that its claim of defendants' vicarious liability was frivolous and groundless. We perceive no error.

The record reveals that the basis for this claim was defendants' relationship with certain mortgage brokers who had brokered the loans and who were Nienke's "contact" to defendants.

The existence of an agency depends on the facts. *Stortroen v. Beneficial Finance Co.,* 736 P.2d 391 (Colo.1987). Hence, we conclude that if, as here, a business relationship between the brokers and the defendants was undisputed, it was not *frivolous* for the law firm to assert that the nature of this relationship was one of agent and principal. *See Stortroen, supra* ("[A]n agency relation may exist even though the parties do not call it an agency and do not subjectively intend that legal consequences flow from their relation" 736 P.2d at 395).

Accordingly, the dispositive issue with regard to the trial court's award under this

claim turns on the matter of groundlessness, that is, whether there was any credible evidence *at trial* to support the law firm's assertion that the brokers and defendants did, indeed, occupy an agent-principal relationship. We conclude that there was not.

The closing statement upon which the law firm premises its argument that defendants and the brokers "[shared] the proceeds" of the $77,000 loan clearly identifies and differentiates the origination fee of $7,700 from the fees disbursed to the brokers, the latter clearly identified as "brokers" fees. Moreover, we conclude that evidence indicating that the brokers and defendants pursued a number of similar transactions and that the brokers offered a number of services to facilitate the loans they brokered was insufficient evidence from which reasonably to infer that the parties relationship extended beyond that generally occupied by a loan broker and a private mortgage investor so as to impute vicarious liability.

Accordingly, we perceive no error in the trial court's determination that this claim was groundless and, thus, find no error in its award of attorney fees on this claim.

## II.

Next, the law firm contends that the trial court erred in awarding defendants attorney fees on the basis of its alleged unjustified "expansion" of the proceedings. At oral arguments, defense counsel conceded that none of the attorney fee awards here were specifically attributable to this matter; therefore, we do not address this contention.

The order is affirmed except as to that part which awards defendants attorney fees for defense of the law firm's claims under the CCPA. On this issue, the order is reversed, and the cause is remanded to the trial court with directions to reduce the award by the amount of the fees attributable to the CCPA claim.

CRISWELL, J., concurs.

ROTHENBERG, J., concurs in part and dissents in part.

Judge ROTHENBERG concurring in part and dissenting in part.

I concur in part and dissent in part.

The undisputed facts here show that, after the plaintiff had presented her case at trial, the trial court dismissed all but one of her claims. The court then suggested to counsel that they explore settlement. The parties left the courtroom, and apparently arrived at a settlement. However, since plaintiff was a protected person and a conservator had been appointed, the settlement required the approval of the probate court which had jurisdiction over a different aspect of the case.

Counsel contacted the probate court and was directed to ask the trial court for a "preliminary ruling" as to whether plaintiff's action against the Naiman defendants was within the scope of the groundless and frivolous statute. This colloquy explains:

Plaintiff's counsel: "Your honor, I am in a position of requesting some further rulings of the court.... Let me explain the reasons....

I have had one telephone conference with [the probate court] ... concerning the settlement proposal which the Naiman defendants made to us....

[The probate court] found, this morning, that the settlement would provide no benefit to the Estate of Belle Nienke but would accrue solely to the benefit of the plaintiff's counsel. So that, therefore, there was an ethical problem presented in plaintiff's counsel proceeding further with any settlement discussions. In fact, [the probate court] went further and directed that settlement negotiations go further.... *[The probate court] has directed that I try to settle this case this morning. But, [it] has told me that I may not do so unless I first request from this Court certain rulings* to eliminate the ethical problem....

For that reason, we request that the Court, rather than waiting till the end of

this case, that this Court rule on the claims by the Naiman defendants that plaintiff's counsel have violated Rule 11 in bringing the claims that were asserted in this action and were dismissed yesterday afternoon, and that the Court further rule on the question of whether those claims were groundless and frivolous or vexatious within the meaning of the current statute....

*[O]nce there are rulings on those issues, it is the [probate court's] position that we can go forward and make the settlement offer that [it] has directed us to make."* (emphasis added)

The trial court responded by advising counsel that, although some claims "perhaps should have not been brought," *the case was not "substantially frivolous or groundless under § 13-17-101, overall."* (emphasis added) And, although the court expressed its concern about two claims, it stated that it had not "seen any special expenditures in defense of any claims that perhaps should not have been brought...."

Further, the trial court stated that neither of the plaintiff's claims against defendant Bank Western had been groundless or frivolous and that "the case against Bank Western was always *much weaker* than the case against the Naiman defendants." (emphasis added)

According to plaintiff's opening brief, based upon the court's statements and "believing that the issue of attorney fees was no longer material to impact settlement negotiations," the parties resumed negotiations and settled the case with the approval of the probate court. The final settlement provided for a $24,000 payment to the plaintiff by the Naiman defendants. And, although the Naiman defendants reserved their right to bring a claim for groundless and frivolous litigation against plaintiff's counsel, plaintiff's counsel viewed that reservation of rights in the context of the trial court's "preliminary ruling" in their favor.

Following the settlement, the Naiman defendants moved for and were awarded attorney fees against plaintiff's attorneys under the groundless and frivolous statute

for the claims under the Colorado Consumer Protection Act, § 6-1-101, C.R.S. (1992 Repl.Vol. 2) and the Colorado Organized Crime Control Act, § 18-17-101, C.R.S. (1986 Repl.Vol. 8B).

On appeal, plaintiff's counsel now contend that the claims brought were not groundless or frivolous. I do not reach the issues of the merits of any particular claim because I conclude that a combination of the law of the case doctrine and general equitable principles prohibit the award of attorney's fees here.

Under the law of the case doctrine, a trial court must adhere to determinations previously reached by a reviewing court which are peculiarly within its province. That is, the pronouncement of an appellate court on an issue presented to it, and rulings logically necessary to its holding, become the law of the case which must be followed by the trial court on remand. *People v. Roybal,* 672 P.2d 1003 (Colo. 1983).

However, the law of the case doctrine refers not only to the conclusive effect of appellate rulings on remand, but also to the binding force of trial court rulings during later trial court proceedings. Thus, prior relevant rulings made by the trial court in the same case should be followed unless the court, in its discretion, determines that: its former ruling is no longer sound because of changed conditions, *People ex rel. Gallagher v. District Court,* 666 P.2d 550 (Colo.1983); it needs to correct its previous ruling because of a legal or factual error; there occurs an intervening change in the law; or the court concludes that manifest injustice would result from its original ruling. *Verzuh v. Rouse,* 660 P.2d 1301 (Colo. App.1982).

In *Howard v. Wood Bros. Homes, Inc.,* 835 P.2d 556, 558 (Colo.App.1992), this court reviewed the law of the case doctrine and stated:

[S]ubject to exceptions not pertinent here, a determinative decision on an issue of law made at one stage of the case becomes binding precedent to be fol-

lowed in successive stages of the same litigation.

In *Governor's Ranch Professional Center, Ltd. v. Mercy of Colorado Inc.*, 793 P.2d 648, (Colo.App.1990), this court ruled that the trial court had misapplied the law of the case doctrine by relying upon its factual findings from a preliminary injunction hearing to dispose of the action on the merits. There, we distinguished between dispositive rulings and preliminary rulings which occur before counsel have had a full and fair opportunity to present their cases:

> The party moving for a preliminary injunction has no obligation to present his entire case in the hearing ... [or] the incentive to develop his case as thoroughly as during trial. 793 P.2d at 651

Here, the trial court's ruling, although labelled as a "preliminary" ruling, was in fact a dispositive ruling issued after the plaintiff had fully presented her case and had rested, and after the trial court had heard argument and had ruled upon the Naiman defendants' motion to dismiss. Perhaps most importantly, the ruling was issued by the trial court at the request of plaintiff's counsel. And, counsel was ordered by the probate court to elicit such a ruling before settling the plaintiff's case.

Unlike the situation in *Governor's Ranch, supra*, here, neither party presented any additional evidence to the court regarding the frivolous and groundless issues. Rather, after the settlement, the defendants submitted a written motion accompanied by a brief which was followed by plaintiff's brief opposing the award of attorney's fees. Neither party showed the court any changed conditions, any change in the law, or any earlier misperception by the trial court as to the relevant facts or law.

In summary, I find nothing in the record suggesting the trial court's original finding that the case was *not* groundless and frivolous was unsound because of changed circumstances, or that a manifest injustice resulted from that ruling. To the contrary, the trial court's redetermination of the groundless and frivolous issue occurred after plaintiff, her counsel, and the probate court had acted in reliance upon it.

I recognize that the majority has not addressed the issue I consider dispositive because it was not properly raised. I disagree and conclude that the issue is sufficiently important to warrant our consideration.

Nor was this issue overlooked by the trial court. In granting the defendant's motion for attorney's fees, the trial court obviously recognized the problem created by its earlier ruling because the trial court's order states:

> *The Court is aware of its findings on the date settlement was being proposed.* The Court made the finding that the case was not frivolously brought *overall* under the standards of § 13–17–101, *et seq.* (original emphasis).

Apart from the law of the case doctrine, it appears to me inequitable to assess attorney fees under these circumstances. In different factual contexts, our supreme court has held that counsel's reasonable reliance upon a court's ruling, albeit an erroneous ruling, justifies a relaxation of otherwise mandatory rules. The underpinning of these decisions, as I read them, is that it is unfair to penalize counsel for their good faith reliance upon the statements and rulings of a trial court, even when the court is wrong. *See Converse v. Zinke,* 635 P.2d 882 (Colo.1981) (trial court's statement on the record that 15 days rather than 10 days are allowed for filing post-judgment motions constitutes a "unique circumstances" exception to the mandatory language for timing of motions under C.R.C.P. 6(b)); *Tyler v. Adams County Department of Social Services,* 697 P.2d 29 (Colo.1985) (counsel's failure to perfect an appeal in reliance upon trial court's erroneous statement that a motion for a new trial was unnecessary constituted excusable neglect justifying relief under C.R.C.P. 60.); *World Wide Construction Service, Inc. v. Chapman,* 683 P.2d 1198, (Colo. 1984) (where complainant in action before Colorado Civil Rights Commission waived issuance of an order requiring reinstatement based upon Commission counsel and

Commission's reasonable reliance upon court of appeals decision, case remanded to allow complainant to request reinstatement because court considered it "unfair and unduly formalistic to deny complainant relief." 683 P.2d at 1201).

For these reasons, I conclude that the law of the case doctrine combined with considerations of equity and fairness required the trial court, under these unusual circumstances, to adhere to its original ruling finding the plaintiff's claims not groundless and frivolous and that the failure to do so was error. Therefore, I agree with that portion of the judgment in which the majority reverses the award of attorney's fees, albeit for different reasons, and I dissent from that portion of the judgment upholding attorney's fees. In view of this, I need not address the merits of the majority opinion regarding the alleged groundlessness or frivolousness of the claims.