**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARCIE A. REDGRAVE, individually and on behalf of all others similarly situated,<br><br>*Plaintiff-Appellant*,<br><br>v.<br><br>DOUG DUCEY, Governor; THOMAS J. BETLACH, in his official capacity as Director of the Arizona Health Care Cost Containment System; ARIZONA DEPARTMENT OF ECONOMIC SECURITY; ARIZONA DIVISION OF DEVELOPMENTAL DISABILITIES,<br><br>*Defendants-Appellees.* | No. 18-17150<br><br>D.C. No. 2:18-cv-01247-DLR<br><br>ORDER CERTIFYING QUESTION TO ARIZONA SUPREME COURT |

Appeal from the United States District Court
for the District of Arizona
Douglas L. Rayes, District Judge, Presiding

Argued and Submitted February 4, 2020
Phoenix, Arizona

Filed March 25, 2020

Before: Diarmuid F. O'Scannlain, Susan P. Graber,
and Eric D. Miller, Circuit Judges.

Order by Judge O'Scannlain

## SUMMARY[*]

**Certification of Question to State Court**

The panel certified the following question to the Arizona Supreme Court:

> Has Arizona consented to damages liability for a State agency's violation of the minimum wage or overtime provisions of the federal Fair Labor Standards Act, 29 U.S.C. §§ 206–207?

## COUNSEL

Kaitlyn Redfield-Ortiz (argued), Nicholas J. Enoch, and Stanley Lubin, Lubin & Enoch P.C., Phoenix, Arizona, for Plaintiff-Appellant.

Cory G. Walker (argued) and Mark Ogden, Littler Mendelson P.C., Phoenix, Arizona, for Defendants-Appellees.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## **ORDER**

O'SCANNLAIN, Circuit Judge:

Pursuant to Arizona Revised Statutes section 12-1861 and Supreme Court of Arizona Rule 27, we certify to the Arizona Supreme Court the question of law set forth in Part I of this order. The answer to this question may be determinative of the cause pending before this court, and there appears to be no controlling precedent in the decisions of the Arizona Supreme Court or the Arizona Court of Appeals.

I

The question to be answered is:

Has Arizona consented to damages liability for a State agency's violation of the minimum wage or overtime provisions of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206–207?

The Arizona Supreme Court may rephrase the question as it deems necessary.

II

Counsel for Plaintiff–Appellant Marcie A. Redgrave are:

Nicholas J. Enoch
Stanley Lubin
Kaitlyn A. Redfield-Ortiz
LUBIN & ENOCH, P.C.
349 North Fourth Avenue
Phoenix, AZ 85003
(602) 234-0008

Counsel for Defendants–Appellees Doug Ducey, in his capacity as Governor of the State of Arizona; Thomas J. Betlach, in his capacity as Director of the Arizona Health Care Cost Containment System; the Arizona Department of Economic Security; and the DES Division of Developmental Disabilities are:

Mark Ogden
Cory G. Walker
Littler Mendelson, P.C.
2425 East Camelback Road, Suite 900
Phoenix, AZ 85016
(602) 474-3600

### III

### A

Marcie Redgrave works as an in-home caretaker for an individual with cerebral palsy.  That individual, P.L., is a beneficiary of the Arizona Long-Term Care System ("ALTCS").  ALTCS is a Medicaid program operated by the Arizona Department of Economic Security's Division of Developmental Disabilities ("DDD"), which functions as a managed care organization.  Called an "independent provider," Redgrave is hired directly by DDD.

Redgrave has served as P.L.'s attendant caretaker in several states. She alleges that she is responsible for P.L.'s round-the-clock needs: personal hygiene, preparing meals, managing medical appointments, housecleaning, laundry, and assistance in P.L.'s daily activities, such as visiting friends, all allowing her little time off. In 2010, Redgrave and P.L. moved to Arizona, where P.L. became a beneficiary of ALTCS. According to Redgrave, she is paid $12.30 an hour for sixteen hours a day, seven days a week. Before her compensation was adjusted in 2016, she asserts that she was paid for only eight hours a day, seven days a week. Redgrave argues that she and other independent providers work twenty-four hours a day and, at the very least, that the DDD's method for calculating compensation hours violates federal regulations.

B

In February 2018, Redgrave filed this putative collective action "on behalf of herself and other similarly-situated Independent Providers" in Maricopa County Superior Court pursuant to 29 U.S.C. § 216(b), FLSA's private right of action for damages. She alleges that an independent provider like herself meets the definition of an "employee" of the DDD and that the DDD is a "third-party employer." *See* 29 U.S.C. § 203(e)(2); 29 C.F.R. § 552.109(c) (excluding third-party employers from 29 U.S.C. § 213(b)(21)'s exemption of live-in domestic service workers from FLSA's overtime provision). As such, she claims the protections of the FLSA's minimum-wage provision and its time-and-a-half overtime provision. *See* 29 U.S.C. § 206(a) (requiring employers to pay a minimum wage for each hour worked); *id.* § 207(a)(1) (requiring employers to pay employees "one and one-half times the regular rate" for each hour worked in a week in excess of

forty hours); 29 C.F.R. § 552.102(a) (defining hours worked for a "live-in worker"). She seeks awards of unpaid overtime, unpaid minimum wages, and liquidated damages, plus interest. She also seeks a declaration that she and other similarly situated individuals are entitled to be paid for all the hours they work, including time-and-a-half for their overtime hours.

Redgrave sued her alleged employer, DDD, along with the Department of Economic Security (of which DDD is a division), Thomas Betlach in his official capacity as Director of the Arizona Health Care Cost Containment System, and Doug Ducey in his official capacity as Governor of Arizona. For our purposes, we refer to the four Defendants–Appellees collectively as simply "the State."

C

The State removed the case to federal court, asserted its sovereign immunity from such claims, and moved to dismiss the case. In the district court, Redgrave raised two objections to the State's purported sovereign immunity: first that, by removing the case to federal court, the State waived its sovereign immunity and, second, that Arizona has waived its sovereign immunity from FLSA claims as a matter of law. The district court rejected each supposed waiver of state sovereign immunity.

On the question of whether Arizona waived its sovereign immunity from FLSA claims as a matter of law, the district court concluded that neither the Arizona Supreme Court's decision to abrogate state sovereign immunity in *Stone v. Arizona Highway Commission*, 381 P.2d 107 (Ariz. 1963), nor the Arizona State Legislature's limitations on state sovereign immunity established in the Actions Against Public Entities or Public Employees Act ("Public Entities

Act"), Ariz. Rev. Stat. §§ 12-820–12-826, amounted to a waiver of immunity from claims under FLSA because each dealt only with immunity from tort liability. *Redgrave v. Ducey*, No. CV-18-01247-PHX-DLR, 2018 WL 4931722, at \*2 (D. Ariz. Oct. 11, 2018).

IV

A

Our court has determined that when a State removes a case it invokes the jurisdiction of the federal district court and thereby waives the sovereign immunity *from suit* it would enjoy in state court. *Walden v. Nevada*, 945 F.3d 1088, 1092 n.1, 1094–95 (9th Cir. 2019). The State asserts that its removal of this case did not effect a waiver of its sovereign immunity *from liability*. Indeed, the several circuits to share *Walden*'s conclusion all hold that removal merely waives immunity from suit but not the defense of immunity from liability. *See*, *e.g.*, *Trant v. Oklahoma*, 754 F.3d 1158, 1172 (10th Cir. 2014); *Stroud v. McIntosh*, 722 F.3d 1294, 1302 (11th Cir. 2013); *Lombardo v. Pa. Dep't of Pub. Welfare*, 540 F.3d 190, 198 (3d Cir. 2008); *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 255 (5th Cir. 2005); *see also* Jessica Wagner, Note, *Waiver by Removal? An Analysis of State Sovereign Immunity*, 102 Va. L. Rev. 549, 555–60 (2016) (describing the split of authority between those circuits holding that removal does not waive state sovereign immunity at all and those holding that removal waives immunity from suit but not immunity from liability). A state's invocation of sovereign immunity from liability would be an affirmative defense to a congressionally created private right of action for damages, such as those under FLSA. As the Supreme Court explained in *Alden v. Maine*, 527 U.S. 706 (1999), because the states retain a "residuary and inviolable sovereignty," it is beyond the

power of Congress to authorize private suits for monetary damages against a state without that state's consent to such actions. *Id.* at 712, 715, 748–54. We have not decided and in this Order do not decide whether removal to federal court effects a waiver of such state sovereign immunity from liability.

We ask the Arizona Supreme Court to advise whether Arizona possesses the defense of immunity from FLSA liability in the first place. In other words, we ask whether Arizona is among those states that consent to private suits for damages for violations of FLSA's overtime and minimum-wage provisions or if it is among those states that do not so consent. *Cf. Meyers*, 410 F.3d at 253 ("[C]ourts must look to the law of the particular state in determining whether it has established a separate immunity against liability . . . .").

B

The Public Entities Act identifies a range of circumstances in which Arizona maintains its sovereign immunity. *See* Ariz. Rev. Stat. §§ 12-820.01–.05. In Redgrave's view, Arizona has consented to private suits for damages under FLSA because the Public Entities Act's absolute immunity provision fails to assert immunity from FLSA claims. *See id.* § 12-820.01. Under section 12-820.01(A), the state and its subdivisions:

> shall not be liable for acts and omissions of its employees constituting either of the following:
>
>> 1. The exercise of a judicial or legislative function.

> 2. The exercise of an administrative function involving the determination of fundamental governmental policy.

*Id.* By implication, the Public Entities Act may accept liability for all other claims against the state and its subdivisions. Redgrave argues that Arizona does not enjoy sovereign immunity from her FLSA claims because the setting of independent providers' pay and hours is neither a judicial function, nor a legislative function, nor a determination of fundamental government policy. There appears to be no controlling precedent specifying that ALTCS's compensation of independent providers is not a fundamental government policy. Nor is it apparent to us whether section 12-820.01 even governs the question of Arizona's immunity from FLSA claims.

1

In the view of the State's counsel and the decision of the district court, the Public Entities Act waives only Arizona's sovereign immunity from *tort* liability. The district court read the 1963 *Stone* decision as having abrogated "governmental immunity from tort liability" only. *Stone*, 381 P.2d at 109; *see Redgrave*, 2018 WL 4931722, at *2. Under this view, the Public Entities Act, which was initially proposed by the Governor's Commission on Governmental Tort Liability, created an exception to *Stone*'s abrogation and selectively reasserted governmental tort immunity. *See Glazer v. State*, 347 P.3d 1141, 1144 (Ariz. 2015); *City of Tucson v. Fahringer*, 795 P.2d 819, 820 (Ariz. 1990) (calling the Public Entities Act a "tort claims act"). Thus, the district court concluded that Arizona retains its inherent right to immunity from non-tort claims, including, of course, FLSA claims. *Redgrave*, 2018 WL 4931722, at *2.

Despite *Stone*'s focus on tort claims, the Public Entities Act itself may occupy the field of Arizona's law of sovereign immunity. *See Backus v. State*, 203 P.3d 499, 502 (Ariz. 2009); *City of Phoenix v. Fields*, 201 P.3d 529, 532 (Ariz. 2009) (calling the Public Entities Act "a comprehensive statutory scheme governing actions against public entities and employees"). Indeed, many references to "tort liability" were removed from the bill during the drafting process, indicating a legislative purpose to define state sovereign immunity more broadly. *Compare* Governor's Comm'n on Governmental Tort Liability, Ariz. Governmental Tort Claims Act (Dec. 16, 1983), *with* 1984 Ariz. Sess. Laws 1091–94; *cf. Russello v. United States*, 464 U.S. 16, 23–24 (1983) ("Where Congress includes limiting language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the limitation was not intended."). However, the remaining reference to tort immunity—in the residual "other immunities" provision—could be understood to limit the Public Entities Act's scope to tort claims. *See* Ariz. Rev. Stat. § 12-820.05(A) (stating that the Public Entities Act "shall not be construed to affect, alter or otherwise modify *any other rules of tort immunity* regarding public entities and public officers as developed at common law and as established under the statutes and the constitution of this state" (emphasis added)).

Arizona courts have from time to time applied the Public Entities Act's provisions to non-tort claims. *E.g.*, *Fields*, 201 P.3d at 531, 534 (applying the Public Entities Act's requirement under section 12-821.01(A) that a person with claims against a public entity make a settlement demand within 180 days—not an immunity provision—to class claims for constructive fraud, breach of contract, and failure

to pay wages);[1] *Kromko v. Ariz. Bd. of Regents*, 146 P.3d 1016, 1022, 1024 (Ariz. Ct. App. 2006), *vacated on other grounds*, 165 P.3d 168 (Ariz. 2007) (holding that, under section 12-820.01(A), the legislature but not the Board of Regents was immune from lawsuit alleging that tuition hikes violated the Arizona Constitution); *Pima County v. State*, 850 P.2d 115, 118 (Ariz. Ct. App. 1992) (concluding that the state auditor general did not enjoy legislative immunity from Pima County's challenge to its calculation of the county's statutorily required contribution to a health care fund). However, it is not apparent from these cases whether the state defendants raised the issue of the Public Entities Act's application to non-tort claims.

2

Another possibility is that the Public Entities Act effects a waiver of Arizona's state sovereign immunity from both tort claims and non-tort claims but that such a waiver is limited to claims arising out of state law—in other words that Arizona specifically retains its immunity from federal law claims like those in this case. Such a reading is supported by the Public Entities Act's enacted statement of purpose, in which the Legislature declared it "to be the public policy of this state that public entities are liable for the acts or omissions of public employees in accordance with the statutes and common law *of this state*." 1984 Ariz. Sess. Laws 1091–92 (emphasis added). Insofar as the scope of the Public Entities Act's provisions is ambiguous, the enacted statement of purpose may suggest that the Act does not govern immunity from federal claims. *Cf.* Antonin Scalia &

---

[1] *Fields* might be especially relevant because the grounds of an Arizona law claim of failure to pay wages are similar to those of the FLSA claims in this case. 201 P.3d at 531.

Bryan A. Garner, *Reading Law* 218 (2012) ("[T]he prologue does set forth the assumed facts and the purposes that the majority of the enacting legislature . . . had in mind, and these can shed light on the meaning of the operative provisions that follow.").

3

Finally, we are unsure whether to read the Public Entities Act by applying the usual rule of construction that a sovereign does not subject itself to liability unless it does so explicitly. "[A] waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Peña*, 518 U.S. 187, 192 (1996); *see also* Amy Coney Barrett, *Substantive Canons and Faithful Agency*, 90 B.U. L. Rev. 109, 146–50 (2010) (describing the long history of the canon requiring a clear statement before interpreting a law to override sovereign immunity). Yet the Arizona Supreme Court may have flipped the traditional rule—at least in dicta. According to the Court, "governmental liability is the rule in Arizona and immunity is the exception . . . [w]e therefore construe immunity provisions narrowly." *Doe ex rel. Doe v. State*, 24 P.3d 1269, 1271 (Ariz. 2001). It is not apparent, however, whether the canon is only reversed as to tort claims (if at all). *See*, *e.g.*, *Fahringer*, 795 P.2d at 820 (stating the rule as "when a government entity or employee is a defendant in a tort action, 'the rule is liability and immunity is the exception'" (quoting *Stone*, 381 P.2d at 112)).

V

It appears to this court that there is no controlling precedent of the Arizona Supreme Court or the Arizona Court of Appeals with regard to the State's assertion of its sovereign immunity from a private suit for damages under

FLSA. We thus request that the Arizona Supreme Court accept and decide the certified question.

In light of our decision to certify the question set forth above, submission of this case is withdrawn, and all proceedings are stayed pending the Arizona Supreme Court's decision whether it will accept review and, if so, receipt of the answer to the certified question. The Clerk is directed to administratively close this docket pending further order. The parties shall notify the Clerk of this court within one week after the Arizona Supreme Court accepts or rejects the certified question, and again within one week after the Arizona Supreme Court renders its opinion if accepted. The panel will resume control and jurisdiction upon receipt of an answer to the certified question or upon the Arizona Supreme Court's decision to decline to answer the certified question.

The Clerk of this court shall file an original and six copies of this order with the clerk of the Arizona Supreme Court. Upon request of the Arizona Supreme Court and as the Arizona Supreme Court deems necessary, the Clerk of this court shall transmit the original or copies of portions of the record.

**IT IS SO ORDERED.**

/s/ Diarmuid F. O'Scannlain

Diarmuid F. O'Scannlain,
Circuit Judge