**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

GEORGE CALCUT; GERI CALCUT

            Plaintiffs-Appellants,

  v.

PARAMOUNT RESIDENTIAL
MORTGAGE GROUP, INC.; CENLAR
FSB,

            Defendants-Appellees.

No.   24-764

D.C. No.
2:22-CV-01215-JJT

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Arizona
John Joseph Tuchi, District Judge, Presiding

Argued and Submitted December 5, 2024
San Francisco, California

Before: COLLINS, VANDYKE, and MENDOZA, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge COLLINS.

George and Geri Calcut had a Veterans Affairs ("VA") backed loan with

Paramount Residential Mortgage Group ("Paramount"), serviced by Cenlar FSB

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

("Cenlar"). The loan was in forbearance during the COVID-19 pandemic. The Calcuts claim that, as the loan came out of forbearance, Defendants violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, and the Arizona Consumer Fraud Act ("ACFA"), A.R.S. 44-1521 *et seq.*, in handling the Calcuts' loan. We have jurisdiction under 28 U.S.C. § 1291 and review a district court's grant of summary judgment de novo. *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 988 (9th Cir. 2016) (en banc) (per curiam). We affirm.

1.      Under RESPA, borrowers may recover damages from loan servicers who violate its provisions. 12 U.S.C. § 2605(f). Defendants do not contest that Cenlar is subject to RESPA's provisions. One of those provisions is Section 2605(k)(1), providing that

> (1) In general. A servicer of a federally related mortgage shall not—
> . . .
> (C) fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties;
> . . .
> (E) fail to comply with any other obligation found by the Bureau of Consumer Financial Protection [("CFPB")], by regulation, to be appropriate to carry out the consumer protection purposes of this chapter.

12 U.S.C. § 2605(k)(1)(C), (E). The Calcuts argue that Defendants violated this provision based on its language, VA regulations of servicers for VA loans, and CFPB regulations.

The Calcuts argue that Defendants failed to "take timely action" in response to the Calcuts' requests for Defendants to correct errors regarding the Calcuts' loan modification, thereby violating Section 2605(k)(1)(C). *Id.* Specifically, the Calcuts contend that when their loan exited forbearance, Defendants did not accurately inform them of their options for repayment plans, nor properly evaluate them for available options. Even assuming that the Defendants failed to correct these asserted errors, that failure would not be a basis for liability stemming from Section 2605(k)(1)(C).

First, errors relating to the allocation of payments are not the same as errors relating to how those payment obligations arose—through origination or modification of the terms of a loan. *See Morgan v. Caliber Home Loans, Inc.*, 26 F.4th 643, 651 (4th Cir. 2022) (rejecting a Section 2605(k)(1)(C) claim because the plaintiff did not raise any dispute as to any particular payment, only the terms of the payments). Second, we have explained before that RESPA's use of the term "servicing" is meant to "encompass only 'receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments.'" *Medrano v. Flagstar*

*Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012) (quoting 12 U.S.C. § 2605(i)(3)).

"Servicing" (and by extension "other standard servicer's duties") does not concern "transactions and circumstances surrounding a loan's origination" or "request[s] for modification of a loan agreement." *Id.* at 666–67; *see also Morgan*, 26 F.4th at 651 ("A loan modification is a contractual issue, not a servicing matter.").[1]

Next, the Calcuts seek to extend "other standard servicer's duties" to include a duty to adhere to VA loan guidelines, which they contend Defendants did not do and thereby violated Section 2605(k)(1)(C). The Calcuts specifically refer to VA Circular 26-21-13, which is a VA document providing a cascading array of payment plans for VA borrowers as COVID-19 forbearance ends. However, as explained above, Section 2605(k)(1)(C)'s cause of action does not extend to a servicer's asserted failure to offer certain payment plan options or adhere to a particular standard in a loan's modification. *See Medrano*, 704 F.3d at 666–68. For the same

---

[1] The Calcuts also highlight that Defendants made an error in credit reporting, which Defendants admit, and argue that this error gives rise to liability under Section 2605(k)(1)(C). On its face, however, Section 2605(k)(1)(C) does not concern credit reporting, and indeed, a separate statute, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, sets forth a detailed scheme imposing liability on servicers who fail to correct erroneous credit reporting. *See, e.g., Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1250–51 (9th Cir. 2022). The Calcuts argue that because 12 U.S.C. § 2605(e)(3) "regulate[s] credit reporting by servicers," credit reporting must be a standard servicer's duty. But that inference lacks merit in view of Section 2605(k)(1)(C)'s text, our decision in *Medrano*, and the existence of FCRA.

reason, the Calcuts' reliance on VA Circulars 26-20-12 and 26-21-07 is also unavailing.[2]

Finally, the Calcuts attempt to make a claim out of Section 2605(k)(1)(E)'s reference to the CFPB regulations, first citing 12 C.F.R. § 1024.41(c), which requires that the servicers evaluate borrowers for all "loss mitigation options" available. A "loss mitigation option" is "an alternative to foreclosure offered by the owner or assignee of a mortgage loan that is made available through the servicer to the borrower." 12 C.F.R. § 1024.31. Even assuming that the Calcuts filed a valid "loss mitigation application," the Calcuts's claim under Section 1024.41(c) still fails. In their opening brief, the Calcuts contend that Defendants failed to properly evaluate the Calcuts for the COVID-19 Veterans Assistance Partial Claim Payment Program ("VAPCP") and the COVID-19 Home Retention Waterfall. But neither of these programs were "offered by" Defendants on June 1, 2021, the day Defendants approved the Calcuts' loan modification, which the Calcuts agreed to and made payments towards. Rather, the VAPCP went into effect on July 27, 2021, and Cenlar did not begin offering it until October 12, 2021. And as the Calcuts concede, the VA did not issue the Home Retention Waterfall circular until July 23, 2021. Accordingly, the Calcuts lack a meritorious claim under Section 1024.41(c).

---

[2] The VA Circulars do not give rise to liability under Section 2605(k)(1)(E) because that provision concerns the CFPB's regulations, not the VA's.

5

The Calcuts also cite 12 C.F.R. § 1024.38, which requires that a servicer "maintain policies and procedures that are reasonably designed to achieve" a number of objectives, most relevantly including that a servicer should "[i]nvestigate, respond to, and, as appropriate, make corrections in response to complaints" and "[p]rovide a borrower with accurate and timely information and documents in response to the borrower's requests for information with respect to the borrower's mortgage loan." 12 C.F.R. § 1024.38(a), (b)(ii)–(iii). The Calcuts point to no deficiency in Defendants' policies other than as applied to them in this one instance: the purported failure to evaluate them for all payment plan options as forbearance ended. That is clearly insufficient under Section 1024.38.

All in all, the Calcuts primarily rely on RESPA's "purpose" to create a cause of action, rather than the text of the statute or relevant regulations. We are sympathetic to the frustrating position that they were in, but we must decline to create a cause of action without a statutory basis to do so.

2.     The Calcuts ask that we certify a question to the highest Arizona state court to determine whether their transaction with Defendants may give rise to an ACFA claim. The ACFA regulates "the sale or advertisement of any merchandise." A.R.S. § 44-1522(A). The Arizona Court of Appeals held in 1985 that a loan counts as merchandise for the purpose of the statute. *Villegas v. Transamerica Fin. Servs.*, 708 P.2d 781, 783 (Ariz. Ct. App. 1985). In the decades since, the Arizona District

6

Court has held at times that, while a loan is merchandise, a loan modification is not. *See, e.g.*, *Rich v. BAC Home Loans Servicing LP*, No. CV-11-511, 2014 WL 7671615, at *10 (D. Ariz. Oct. 9, 2014). At other times, the Arizona District Court has held the opposite. *See, e.g.*, *Myrick v. Bank of Am. Corp.*, No. CV-11-00824, 2013 WL 12097453, at *3–4 (D. Ariz. May 30, 2013). There appears to be no authoritative Arizona state court opinion on the issue.

We do not certify questions to a state's highest court lightly. *Murray v. BEJ Minerals, LLC*, 924 F.3d 1070, 1071 (9th Cir. 2019). We are particularly hesitant to do so when asked for the first time on appeal. *Centurion Props. III, LLC v. Chi. Title Ins. Co.*, 793 F.3d 1087, 1091 n.3 (9th Cir. 2015). The process is typically reserved for new questions, or questions of substantial and broad application. *Murray*, 924 F.3d at 1072. Arizona's certification statute provides that their Supreme Court will take only questions that "may be determinative." A.R.S. § 12-1861.

Given our well-established reluctance to consider certification for the first time on appeal, we decline the Calcuts' invitation to certify. The question asked does not appear to be new, particularly substantial, or broad, and the Calcuts have not even attempted to argue otherwise. *See Murray*, 924 F.3d at 1072. Therefore, they fail their burden under our precedent. Further, Arizona's Supreme Court accepts only questions that "may be determinative," and although the Calcuts highlight their argument below that loan modifications fall under the ACFA and *Villegas*, their

7

opening brief does not attempt to demonstrate—or even argue—they would be successful on showing the ACFA's other elements (deception, concealment, etc.). *See* A.R.S. § 44-1522(A).

We further find that the Calcuts have waived any argument for reversal on the merits of the district court's summary judgment on their ACFA claim. Rather than argue the merits, the opening brief explains the split in authority in the federal district courts, states their position on the split, and asks us to certify the question to the Arizona Supreme Court. It asks us, only cursorily and in passing, to certify "and/or reverse the District Court's ruling which failed to explain why the Arizona Supreme Court would rule any differently than the intermediate court's view in *Villegas*."[3] "It is well-established that a bare assertion in an appellate brief, with no supporting argument, is insufficient to preserve a claim on appeal." *Navajo Nation v. United States Forest Serv.*, 535 F.3d 1058, 1079 n.26 (9th Cir. 2008) (en banc), *overruled on other grounds by Apache Stronghold v. United States*, 101 F.4th 1036, 1043 (9th Cir. 2024) (en banc).

Therefore, because the Calcuts have failed their burden for certification and otherwise waive any argument on the merits, we affirm the remainder of the district

---

[3] The Calcut's reply brief further hammers the point home, conceding that "[t]he Calcuts did not present to the Court a merits argument on the scope of the ACFA . . . . Rather, implicit in their request to the Court was their belief that . . . legal question[s] should be addressed by Arizona's Supreme Court[.]"

court's summary judgment as to their ACFA claim. We do not reach the merits of any ACFA-related argument, and this unpublished memorandum disposition shall not be read as resolving any outstanding questions of Arizona state law.

**AFFIRMED.**

*Calcut v. Paramount Residential Mortgage Group*, No. 24-764

COLLINS, Circuit Judge, concurring in part and dissenting in part:

I concur in Part 1 of the court's memorandum disposition, which holds that Plaintiffs lack a viable claim under the federal Real Estate Settlement Procedures Act. I respectfully dissent, however, from Part 2 of the memorandum disposition, which addresses Plaintiffs' claim under the Arizona Consumer Fraud Act ("ACFA"). The ACFA prohibits deceptive acts "in connection with the sale or advertisement of any merchandise." ARIZ. REV. STAT. § 44-1522(A). In Part 2 of the memorandum disposition, the majority holds that Plaintiffs waived any independent merits argument in this court as to whether a loan modification can constitute a "sale of merchandise" under the ACFA, and the majority also denies Plaintiffs' request for this question to be certified to the Arizona Supreme Court. In my view, the majority is wrong on both counts: Plaintiffs did not waive their merits argument concerning the ACFA, and certification to the Arizona Supreme Court is warranted. I therefore dissent from Part 2 of the majority's memorandum disposition.

## I

Plaintiffs did not waive any argument on the merits with respect to their ACFA claim. The district court granted summary judgment against Plaintiffs' ACFA claim based *solely* on the ground that their loan modification did not

constitute a "sale of merchandise" under the ACFA. In their opening brief on appeal, Plaintiffs squarely challenged the district court's conclusion and, in doing so, relied on the Arizona Court of Appeals' decision in *Villegas v. Transamerica Financial Services, Inc.*, 708 P.2d 781 (Ariz. Ct. App. 1985), which held that loans are "sales of merchandise" under the ACFA, *id.* at 783. Specifically, Plaintiffs argued that, under our decision in *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993 (9th Cir. 2007), *Villegas* was binding on the federal courts and that, under *Villegas*'s reasoning, loan *modifications*, like loans themselves, must also constitute "sales of merchandise" under the ACFA. Defendants clearly understood Plaintiffs to be making this particular argument and responded by contending that loan modifications, in contrast to newly made loans, "fall outside the holding of *Villegas*."

The majority notes that Plaintiffs' reply brief subsequently stated that their opening brief "did not present to th[is] [c]ourt a merits argument on the scope of the ACFA," *see* Memo. Dispo. at 8 n.3, but Plaintiffs also clearly stated that they "do not concede the merits argument advanced here by [Defendants]," *viz.*, that *Villegas* assertedly does not extend to loan modifications. Thus, viewed in context, Plaintiffs' statements in their reply brief merely indicate that Plaintiffs relied on *Villegas*'s reasoning, rather than on a *de novo* reading of the ACFA's text, in challenging the district court's decision below. The briefing therefore

2

demonstrates that Plaintiffs sufficiently asserted on appeal that the ACFA covers loan modifications, and so we must either resolve that issue or certify it to the Arizona Supreme Court.

## II

My preference would be to certify to the Arizona Supreme Court the question of whether, and if so, under what circumstances, a loan modification can constitute a "sale of merchandise" under the ACFA.

To begin with, this question is "substantial and of broad application." *See Murray v. BEJ Minerals, LLC*, 924 F.3d 1070, 1072 (9th Cir. 2019). Because *Villegas* (which was decided four decades ago) concerned only loans and not loan modifications, we lack any "controlling precedent" from the Arizona appellate courts addressing the precise question in this appeal. *See* ARIZ. REV. STAT. § 12-1861. This lack of authority has proved problematic, as illustrated by the fact that, for over a decade, the decisions of the U.S. District Court for the District of Arizona have reached divergent conclusions as to whether the ACFA covers loan modifications as well as new loans.[1] In my view, the lack of any pertinent

---

[1] *Compare Rozich v. MTC Fin. Inc.*, No. 23-cv-210-PHX-DWL, 2023 WL 7089801, at *4 (D. Ariz. Oct. 26, 2023) (holding that loan modifications are not "sales of merchandise" under the ACFA); *Zoldessy v. MUFG Union Bank, N.A.*, No. 20-cv-8329-PCT-SPL, 2021 WL 1733398, at *3 (D. Ariz. May 3, 2021) (same); *Rich v. BAC Home Loans Servicing LP*, No. 11-cv-511-PHX-DLR, 2014 WL 7671615, at *10 (D. Ariz. Oct. 9, 2014) (same), *with Narramore v. HSBC Bank USA, N.A.*, No. 09-cv-635-TUC-CKJ, 2010 WL 2732815, at *13 (D. Ariz. July 7,

3

authority other than an arguably distinguishable 40-year-old Arizona Court of Appeals decision, the sharp divergence of views within the federal district court in Arizona, and the frequency with which the question of the ACFA's applicability to loan modifications arises all provide "particularly compelling reasons" for our certifying this question to the Arizona Supreme Court, notwithstanding Plaintiffs' failure to request certification in the district court. *See Peter-Palican v. Northern Mariana Islands*, 673 F.3d 1013, 1017–18 (9th Cir. 2012); *see also Orange Cnty. Dep't of Educ. v. California Dep't of Educ.*, 650 F.3d 1268, 1269 (9th Cir. 2011) (certifying a question in part because "the state administrative and federal judicial bodies that have addressed the certified question to date have reached conflicting and inconsistent conclusions").

Moreover, the question of the ACFA's applicability to loan modifications "may be determinative" of Plaintiffs' ACFA claim. *See* ARIZ. REV. STAT. § 12-1861. Because the district court resolved Plaintiffs' ACFA claim solely on the ground that loan modifications are not "sales of merchandise," the answer to this question would unequivocally be "determinative" of *this appeal*, which is all that the statute requires. *See id.* (stating that "the [Arizona] supreme court may answer

---

2010) (holding that loan modifications are "sales of merchandise" under the ACFA); *Bergdale v. Countrywide Bank FSB*, No. 12-cv-8057-PCT-GMS, 2012 WL 4120482, at *5 (D. Ariz. Sept. 18, 2012) (same); *Myrick v. Bank of Am. Corp.*, No. 11-cv-824-PHX-SRB, 2013 WL 12097453, at *3–4 (D. Ariz. May 30, 2013) (same).

4

questions of law certified to it by . . . a court of appeals of the United States" if the certified question "may be determinative of *the cause then pending in the certifying court*" (emphasis added)).[2] Contrary to what the majority says, it is therefore irrelevant that Plaintiffs' opening brief did not contain a gratuitous discussion of additional issues that were not decided by the district court, such as the adequacy of Plaintiffs' showing in the district court as to "the ACFA's other elements (deception, concealment, etc.)." *See* Memo. Dispo. at 8. Plaintiffs had no obligation, in their opening brief, to address issues not decided by the district court, and they cannot be faulted, as the majority does, for failing to do so.

For these reasons, I would have certified Plaintiffs' question to the Arizona Supreme Court.

### III

Nonetheless, because the majority has declined to certify this question and because in my view Plaintiffs did not waive their ACFA claim, I will address that claim on the merits.

In *Villegas*, the Arizona Court of Appeals held that "money" and "contractual right[s]" constitute "merchandise" and that, because a loan "is the sale

---

[2] Indeed, in *Redgrave v. Ducey*, 953 F.3d 1123 (9th Cir. 2020), we certified a state-law issue to the Arizona Supreme Court, and that court accepted the certification and decided the issue, *see Redgrave v. Ducey*, 493 P.3d 878 (Ariz. 2021), even though we concededly had yet to decide alternative federal grounds that could prove independently dispositive, *see id.* at 880 n.2.

5

of the present use of money on a promise to repay in the future," "the lending of money" constitutes the "sale . . . of . . . merchandise." 708 P.2d at 783. That rationale—which underlies the only relevant published authority we have from the Arizona appellate courts and which is therefore binding, given the absence of "convincing evidence that the state supreme court would decide differently," *see Ryman*, 505 F.3d at 995 (citation omitted)—extends to Plaintiffs' formal loan modification in this case. Plaintiffs' loan modification was functionally a new loan that was newly recorded with the County Clerk. That is, it was essentially equivalent to a trade-in of the old loan for a new loan with new terms "capitaliz[ing] past due amounts, extend[ing] the loan term, and increas[ing] the interest rate to 3.375 percent." Accordingly, while perhaps an informal loan modification—*i.e.*, one that simply restructures an existing payment schedule without new loan documents or a new recording against the property—does not constitute a sale of merchandise under the ACFA, *see, e.g.*, *Zoldessy*, 2021 WL 1733398, at *3, that situation is demonstrably not the case here.

\*     \*     \*

For the foregoing reasons, I would certify the question of the ACFA's scope to the Arizona Supreme Court or, alternatively, I would reverse the district court's summary judgment with respect to Plaintiffs' ACFA claim. Because the majority does otherwise, I respectfully dissent from Part 2 of the memorandum disposition.

6